[No. 22121. Department One. March 17, 1930.]

MELVIN ODDEN, *Respondent*, v. UNION INDEMNITY COMPANY, *Appellant*.[1]

*Bausman, Oldham & Eggerman* and *Edw. L. Rosling*, for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.*, for respondent.

[1]Reported in 286 Pac. 59.

Parker, J.—The plaintiff Odden seeks recovery upon an automobile accident liability policy of insurance issued by the defendant indemnity company, claiming to be a beneficiary thereunder by virtue of its terms and his being injured while riding in the insured automobile as the result of the negligence of its driver. A trial upon the merits in the superior court for King county, sitting without a jury, resulted in findings and judgment awarding to Odden recovery in the sum of $2,778 against the indemnity company, from which it has appealed to this court.

The indemnity company, being duly authorized to do a general insurance business in this state, on May 28, 1927, issued to W. L. Grill, as the named assured and owner of the automobile, its accident automobile liability insurance policy whereby it agreed, in so far as we need here notice the terms of the policy, as follows:

"I. To insure the assured hereunder against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting at any time therefrom, accidentally suffered, or alleged to have been accidentally suffered, by any person or persons, caused by the automobile . . .

"Subject to the following conditions: . . .

"Condition E. The insolvency or bankruptcy of the insured hereunder shall not release the Company from the payment of damages for injuries sustained or loss occasioned during the life of this policy, and in case execution against the insured is returned unsatisfied in action brought by the injured, or his or her personal representative in case death results from the accident because of such insolvency or bankruptcy, then an action may be maintained by the injured person or his or her personal representative against this Company under the terms of this policy, for the amount of the judgment in the said action not exceeding the amount of this policy. . . .

"Condition K. The unqualified word 'Assured,'

wherever used in this policy, shall be construed to include, in addition to the named Assured in this policy, any person or persons while riding in or legally operating any automobile, insured hereunder and any person, firm or corporation legally responsible for the operation thereof with the permission of the named Assured, or if the named Assured be an individual, with the permission of an adult member of the Assured's household other than a chauffeur or domestic servant, except that the terms and conditions of this policy shall not be available to a public automobile garage, automobile repair shop, automobile sales agency, automobile service station and the agents or employees thereof. . . .''

The automobile is specifically described elsewhere in the policy. The insurance liability of the indemnity company, by the terms of the policy, here applicable, is limited to $10,000. The trial judge found in part as follows:

''VI. That thereafter the said W. L. Grill turned said automobile over to one H. E. Hickey to use and operate as his own for business and pleasure and consented to the operation of said automobile by the said Hickey personally and by others. That the said H. E. Hickey took possession of said automobile from the said W. L. Grill and with his consent and permission kept the same in a public garage in the city of Seattle, and that thereafter and for two or three months prior to and including the 3rd day of July, 1927, the said H. E. Hickey did personally use and operate said automobile for business and pleasure and allowed and permitted others to use and operate the same for business and pleasure, and that the said W. L. Grill knew of such use and operation and consented thereto and permitted the same without objection, and that on or about the 3rd day of July, 1927, the said H. E. Hickey authorized one Myron Bullock to use and operate said automobile, and that pursuant to said authorization said Myron Bullock took said automobile from the public garage where it was kept in the said city of

Seattle and drove the same on and about the streets of said city.

"VII. That on or about 4:30 a. m. on the said third day of July, 1927, the said Myron Bullock invited the plaintiff [Odden] and two other young men to ride in said automobile, whereupon the plaintiff and his companions entered said automobile and rode therein. That shortly thereafter and while said parties were riding in said automobile, the said Myron Bullock drove and operated said automobile at a high, dangerous, unlawful, and reckless rate of speed, whereby he lost control of said automobile and caused the same to run up over the street curb and on to the sidewalk and to collide with an iron electric light pole, wrecking said automobile and throwing the occupants out of it and causing severe, painful and permanent physical injuries to the plaintiff, . . ."

In August, 1927, Odden commenced an action in the superior court for King county against Bullock and Hickey, seeking recovery of damages from them which he claimed to have suffered as the result of Bullock's negligent driving of the automobile. Thereupon Bullock and Hickey gave to the indemnity company notice of that action and demanded that it defend them therein, and thereupon the indemnity company, through its attorneys, appeared in that action on behalf of Bullock and Hickey and defended them therein. Its concern was, of course, the possibility of any judgment which might be rendered in favor of Odden against Bullock and Hickey becoming a legal liability against it under its policy.

Thereafter such proceedings were had in that action that on February 20, 1928, final judgment was by the superior court rendered therein awarding to Odden recovery of damages against Bullock and Hickey in the sum of $2,778; which judgment was thereafter on August 8, 1928, upon appeal, affirmed by this court. *Odden v. Bullock,* 148 Wash. 516, 269 Pac. 825.

Thereafter execution in behalf of Odden was duly issued upon that judgment, which was returned wholly unsatisfied, the sheriff certifying that he was unable to find any property belonging to Bullock or Hickey "subject to execution sufficient to satisfy the within named judgment or any part thereof." The trial judge found that both Bullock and Hickey have at all times since the rendering of that judgment against them been insolvent, and that the judgment cannot be collected from either of them. Odden having made demand upon the indemnity company for payment of his judgment against Bullock and Hickey, deeming himself a beneficiary under the policy to the extent of the amount of the judgment, and that demand being refused, he commenced this action against the indemnity company resulting in his judgment against it, from which it prosecutes this appeal.

Did Hickey become an assured under the terms of the policy? It seems to us that he did, in so far as his use of the automobile directly by himself or his permissive use of it by others was within the scope of the privilege and authority vested in him by the loan of it to him by Grill, its owner, the named assured; this because Hickey thereby became "legally responsible for the operation thereof with the permission of the named assured." The principal contention here made in behalf of the insurer indemnity company seems to be that Grill's loan of the automobile to Hickey did not authorize Hickey to permit Bullock to use the automobile for his own pleasure. We have seen that the court found that:

"Grill turned said automobile over to Hickey to use and operate as his own for business and pleasure and consented to the operation of said automobile by Hickey personally and by others,"

and that:

". . . for two or three months prior to and including the third day of July, 1927, Hickey did personally use and operate said automobile for business and pleasure and allowed and permitted others to use and operate the same for business and pleasure, and that Grill knew of such use and operation and consented thereto."

If these findings are supported by the evidence, it plainly appears that the loan of the automobile by Grill to Hickey vested in Hickey full power, while the automobile was so in his possession, to use it personally for his own business or pleasure, and full power to permit its use by others for their own business and pleasure, as if he were the owner of the automobile. It follows, we think, that Hickey's permission to Bullock to so use and permit the use of the automobile was, for purposes of our present inquiry, in legal effect the same as if Grill had himself permitted Bullock to use the automobile for his own pleasure.

Our reading of all the evidence convinces us that it well supports these findings made by the trial judge. There has not been brought to our attention any decisions of the courts of this country which we regard as out of harmony with our conclusion that Odden was, in legal effect, riding in the automobile at the time he was injured with permission of Grill, the named assured. The decisions in *Dickinson v. Maryland Casualty Co.*, 101 Conn. 369, 125 Atl. 866, 41 A. L. R. 500, and *Stovall v. New York Indemnity Co.*, 157 Tenn. 301, 8 S. W. (2d) 473, support our conclusion.

It appears that Bullock did not have an automobile driver's license, as required by our statute, at the time he was driving the automobile and Odden was injured. This, it is argued, absolves the indemnity company from liability, not only to Bullock as an as-

sured, but also to Odden, because Odden was riding in an automobile which was then being illegally operated because of its driver, Bullock, not having a driver's license. Plainly, Odden was legally riding in the automobile. The only way this could possibly have the effect of absolving the indemnity company from liability to Odden under its policy would be to hold that Hickey's authority, under the loan of the automobile to him from Grill, did not authorize him to loan the automobile to an unlicensed driver for his own pleasure.

We have seen that Grill's loan of the automobile to Hickey was unrestricted as to Hickey's use of it and as to his authority in permitting others to use it. So we have a situation in legal effect as if Grill himself had loaned the automobile to Bullock for his own pleasure. Now, suppose Grill himself had so loaned the automobile to Bullock. Could the indemnity company have successfully claimed that, because Bullock did not have a driver's license, he was therefore illegally operating the automobile, within the meaning of Condition K of the policy, above quoted? We think not. That condition, we are of the opinion, means only that, to absolve the indemnity company from liability under its policy to one lawfully riding in the insured automobile, there must be illegality of use of the automobile as between him and the named assured owner. If that condition means more than this, then indeed the insurance which the policy purports to safeguard other persons than the specifically named assured becomes little short of no insurance; since the negligent acts in the operation of automobiles resulting in injury to persons are almost always violations of some public law. Manifestly, it is the intent of the policy to insure against this very large class of negligent acts. *Messersmith v. American Fidelity Co.*, 232 N. Y. 161, 133

N. E. 432, 19 A. L. R. 876, *McMahon v. Pearlman,* 242 Mass. 367, 136 N. E. 154, 23 A. L. R. 1467, and *Fireman's Fund Ins. Co. v. Haley,* 129 Miss. 525, 92 South. 635, 23 A. L. R. 1470.

Counsel for the indemnity company cite and rely upon the decision of the Federal court of this district in *Trotter v. Union Indemnity Co.,* 33 Fed. (2d) 363, and its affirmance by the Federal circuit court of appeals of the ninth circuit, 35 Fed. (2d) 104. Those decisions denied to Trotter, as an insured, recovery against the indemnity company. The claim of Trotter in that case and the claim of Odden in this case grew out of the same accident. Each of them recovered a judgment against Bullock and Hickey. Trotter sued the indemnity company in the superior court for King county upon that judgment, which suit was removed to the Federal court of this district, where it was tried, resulting in a judgment denying to Trotter recovery against the indemnity company; which judgment of the Federal district court was affirmed by the circuit court of appeals. A critical reading of those Federal decisions will disclose that they were rested upon the theory that Grill's loan of the automobile to Hickey was, by the evidence there introduced, shown to be limited to the special purpose of promoting a common business interest of Hickey and Grill.

In that case, as in this, it became a question of fact as to the extent of Hickey's authority, under that loan, to use and permit the use of the automobile. The findings of the trial court in this case, which we have already noticed, show a much more extended and greater authority on the part of Hickey to make use of and permit the use of the automobile, than appeared in Trotter's suit in the Federal court against the indemnity company, wherein he was denied recovery as an assured. We say this in the light of the informa-

tion furnished in the two reported Federal decisions, which is all the information we have as to the proof and findings made in that case. So, we conclude that those Federal decisions are not controlling in our present inquiry. This case must be decided upon the facts and the findings, which the evidence supports, which are of record in this case.

Counsel for the indemnity company also cite and rely upon *Frederiksen v. Employers Liability Assurance Corporation*, 26 Fed. (2d) 76. That case also was decided upon the theory of a very limited loan permissive of the use of an automobile. The permission was simply to attend a funeral, and contemplated the use of the automobile for that purpose for only a few hours and to be driven a comparatively short distance. The automobile was, after the funeral, by the one to whom it was loaned, driven many hours longer upon a trip to a town some forty miles away, on a mere pleasure trip, the plaintiff being injured during the return trip. We think that decision is not controlling in our present inquiry.

We conclude that Odden is entitled to recover from the indemnity company under the terms of its policy, as adjudged by the trial court.

The judgment is affirmed.

MITCHELL, C. J., TOLMAN, BEALS, and MILLARD, JJ., concur.