Marvin Jefson for Use of Elaine Alber, Administratrix of the Estate of Walter Alber, Deceased, Appellee, v. London Guarantee and Accident Company, Ltd., Appellant.

Gen. No. 39,445.

Opinion filed December 15, 1937. Rehearing denied December 28, 1937.

MILLER, GORHAM, WALES & ADAMS, for appellant; EDWARD R. ADAMS and HERBERT C. DE YOUNG, of Chicago, of counsel.

ALFRED ROY HULBERT, of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal taken from a judgment entered in the circuit court in favor of Marvin Jefson for use of Elaine Alber, administratrix of the estate of Walter Alber, deceased, and against the garnishee, London Guarantee and Accident Company, Limited, a corporation, in the sum of $10,457.66. The cause was tried before the court without a jury.

The evidence shows that the London Guarantee and Accident Company had issued a policy of liability insurance to Louisa B. Jackson. The question arising on this appeal is whether Marvin Jefson, who was employed by Mrs. Jackson as a chauffeur and houseman and who was driving Mrs. Jackson's automobile at the time of the accident, was an additional assured under the policy aforesaid.

Plaintiff contends that Jefson was an additional assured under the policy, while the garnishee denies that Jefson was driving the automobile with the consent of the assured and argues that there is no liability whatsoever under paragraph 9 of its policy, commonly referred to as the omnibus clause.

A stipulation of facts was entered into between the parties hereto, upon which the case will be considered. The stipulation reads as follows:

"STIPULATION OF FACTS:

"1. That on June 23, 1934, the garnishee insurance company issued to Mrs. Louisa B. Jackson, who is one and the same person as Mrs. Arthur S. Jackson, a certain policy of automobile public liability insurance No. KD 776656, an exact copy of which policy is attached hereto as Exhibit 'A' and made a part hereof. The policy was in full force and effect on August 11, 1934.

"2. At that time Mrs. Jackson lived on her estate on Waukegan Road in Lake Forest, Illinois, somewhat northwest of the city of Lake Forest, Illinois.

"3. Waukegan Road is a road which runs in a generally northerly and southerly direction somewhat west of the city of Lake Forest, Illinois.

"4. Milwaukee Avenue is a road which, starting in the city limits of Chicago, runs therefrom in a northwesterly direction to Wheeling, Illinois, and thence almost due north. That at the latitude of Lake Forest and of the home of Mrs. Jackson on Waukegan Road, Milwaukee Avenue and Waukegan Road run substantially parallel in a north and south direction at a distance in excess of three and one-half (3½) miles apart.

"5. That the map attached hereto as Exhibit 'B' is hereby made a part hereof and incorporated herein by express reference and shall be considered as having been introduced in evidence and as accurate.

"6. Prior to this date Mrs. Jackson applied to the Secretary of State of Illinois and there was issued to her, an automobile license for the year 1934, No. 1282 for a Chrysler coupe, year 1933, Factory No. 7532094, Engine No. C. Q. 4246. This automobile was described in statement 4 of the above mentioned policy of insurance.

"7. Marvin Jefson was, on August 11, 1934, in the employ of the defendant, Mrs. Jackson, as a chauffeur and houseman. About six o'clock on the evening of August 11, 1934, he asked Mrs. Jackson for permission to take the above mentioned Chrysler coupe to go and have a hair-cut in Lake Forest. The other male employee of Mrs. Jackson was taking his evening off and Mrs. Jackson replied that it was impossible that Mr. Jefson should go. He said it would only take half an hour, and she replied, 'Do you think in half an hour you can get a hair-cut? You know the rule is, there must be one driver on the grounds.' He said he could do it. Whereupon Mrs. Jackson said that if he would be back in half an hour he could take it.

"8. The servants of Mrs. Jackson did not have standing permission to use cars. When they went on errands for her that was a different thing, but for their personal use they were never permitted to use the cars without coming to her. On one occasion she had loaned a car to one of the servants to drive into Chicago to go to a funeral.

"9. Mr. Jefson, immediately after the above conversation, took the automobile. He did not go to any barber shop in Lake Forest. Mr. Jefson drove south on Waukegan Road to the Half Day Road. He drove west on the Half Day Road to Milwaukee Avenue; then south on Milwaukee Avenue to the home of his sister, who was absent, the location of which home is marked on the map by the letter 'A.' This home was south of the village of Half Day. Then he drove

southeastward on Milwaukee Avenue to Chicago, and into the neighborhood of North Avenue and Sedgwick Street, to an address at 434 Sullivan Street, the location of which on the map is marked by the letter 'B.' Later in the night he was driving northwestward on Milwaukee Avenue and south of the village of Wheeling, and at a point on the map marked with the letter 'C' he collided with a motorcycle and another automobile parked on the east side of the pavement, causing the death of the plaintiff's intestate. At this time he was on his way to his sister's home. Her name was and is Mrs. Alice Weber. The location upon the map of Louisa B. Jackson's home is marked with the letter 'D.' The route taken by Mr. Jefson after he left her home to the address at 434 Sullivan Street is marked on the map with a green crayon. The route taken by Mr. Jefson after he left 434 Sullivan Street and to the point of the accident was the same route reversed to the point of the accident.

"10. Elaine Alber is the duly appointed, qualified and acting administratrix of the estate of Walter Alber, deceased, by appointment of the Probate Court of Cook County, Illinois.

"11. As such administratrix she brought suit against Louisa B. Jackson and Marvin Jefson in the Circuit Court of Cook County, Illinois, case No. 35C 3454 and recovered a judgment in the sum of Ten Thousand Dollars ($10,000) and costs against Marvin Jefson. Upon the trial of that case there was a finding in favor of Louisa B. Jackson, and the case was dismissed as to her."

The facts have been presented by stipulation so apparently no controversy exists as to them. As we view this case the only question to be determined is one of law, namely, "What is the legal meaning of the additional assured clause as contained in the automobile insurance policy?" The insurance policy in this

case contains the following clause: "Sec. 9. Additional Assured. The term 'Named Assured' shall mean only the Assured specified in Statement 1, but the term 'Assured' shall include the named Assured and any other person while riding in or legally operating such automobile, and any other person . . . legally responsible for its operation, provided: (a) it is being used with the permission of the named assured . . .; (b) such other person or organization is not covered by any valid and collectible insurance against a loss covered thereby; . . ."

From the facts as stipulated, Mrs. Jackson gave permission to her chauffeur and houseman Jefson to drive her automobile on the evening of August 11, 1934; that this permission was given to him about 6 o'clock in the evening as he said he wished to take the Chrysler coupe and go to Lake Forest to get a haircut; that Jefson told Mrs. Jackson that it would only take him a half hour; that Mrs. Jackson asked him if he thought he could get a haircut in a half hour and reminded him of the rule that there had to be one driver on the grounds; that the other male employee of Mrs. Jackson's was taking the evening off; that Jefson said he could get a haircut in that time, whereupon Mrs. Jackson said that if he could be back in a half hour he could take the car, whereupon he took the car and drove away and according to the stipulation of facts he was gone several hours; that during that period of time the automobile accident occurred, resulting in the death of Walter Alber.

The first question confronting us is: Was Jefson made another assured by the permission given by Mrs. Jackson for him to use the automobile? We think from the facts stipulated there can be no doubt that immediately upon the permission being given, *Jefson was an additional assured* in accordance with section 9 of the insurance policy.

That brings us to another question: Could a limitation be placed upon that permission by the statement of Mrs. Jackson, that if he could get his haircut in a half hour he could take the automobile, when there is no such limitation as to permission expressed in the language used in the policy?

Counsel for defendant argues that the clause in the policy is subject to a reasonable limitation applying to the time when the permission was given and also as to where the driver should go after the permission was granted. In support of his contention the defendant recites some authorities outside this jurisdiction. *Frederiksen v. Employers' Liability Assur. Corp., Ltd., of London, England* (1928), 26 F. (2d) 76; *Trotter v. Union Indemnity Co.* (1929), 35 F. (2d) 104; *Johnson v. American Automobile Ins. Co.* (1932), 161 Atl. 496.

The questions here involved have heretofore been considered by this court in two cases in which the construction of the clause of the policy relating to additional assureds was considered. The case of *Jackson for Use of Schaer v. Bankers Indem. Ins. Co.* (1934), 277 Ill. App. 140, leave to appeal was denied by the Supreme Court. The facts in that case were that Fisher, a friend of Jackson's, obtained the latter's permission to use his automobile for the purpose of doing an errand and after having performed the errand Fisher went on a "joy ride" which resulted in an accident. The insurance company in that case contended that at the time of the accident the driver was not operating the automobile *with the permission* of the named assured. The company contended that at the time and place of the accident the driver was *no longer* using the automobile with permission, and in the *Jackson* case, *supra,* the court in quoting from the case of *Stovall v. New York Indemnity Co.,* 157 Tenn. 301, said:

"It is our opinion that the words 'providing such use or operation is with the permission of the named

assured,' were intended to exclude from the protection of the policy a person who should take the automobile and use it without permission or authority *in the first instance.* If, however, the automobile covered by the policy is delivered to another for use with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, *regardless of whether* the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession.'' That court further held that the use of the car was *subsequent to permission* and that the coverage in the policy applied.

In the case of *Karton v. New Amsterdam Cas. Co.,* 280 Ill. App. 201, the insurance policy therein involved contained the following clause:

''To EXTEND the insurance provided by this Policy, so as to be available, in the same manner and under the same conditions as it is available to the named Assured, to any person or persons while riding in or legally operating any of the automobiles described in the Schedule, . . . provided such use or operation is with the permission of the named Assured.''

The facts in the case from which we have just quoted, were that a Mrs. Shepard owned a certain automobile which was covered by a policy of insurance issued by the New Amsterdam Casualty Co.; that she and a police officer, who was a friend of hers, had been riding and returned to her home about 12:30 in the morning; that the police officer lived four or five blocks from her home and she told him that he could take the automobile to go to his home and to bring it back the next morning; that Weiss, the police officer, drove away in the automobile of the assured, but did not go to his home; that he drove around Chicago, got drunk, and about 5:30 o'clock in the morning was driving the car about five miles from Mrs. Shepard's home

at a speed of between 70 and 90 miles an hour; that he ran head on into a truck, killing himself and injuring two other men. Suit was brought against his estate and judgment obtained. The insurance company contended that the police officer was not using the automobile *at the time of the accident* with the permission of the owner within the meaning of the policy; that the owner did not give the police officer permission to drive the automobile to other places around Chicago as he was doing at the time of the accident. The plaintiff contended that since the police officer was permitted to take the automobile in the first instance, there was a liability although he did not drive to his home, but many miles distant. The court quoted with approval from *Dickinson v. Maryland Casualty Co.,* 101 Conn. 369, where that court held on a similar statement of facts that the insurance company's position could not be maintained in the absence of an express provision in the policy. Also, that the policy could not be narrowly construed in its favor to limit its liability to such injuries only as might occur during the use of the automobile for the specified purpose and in the specified manner for which the permission was granted.

In the *Karton* case, *supra,* the court at page 206, in quoting from the *Dickinson v. Maryland Casualty Co.,* 101 Conn. 369, said:

"The fact that the insurer in this case did not so restrict the term 'permission' is strong evidence that it did not by this provision intend this. To justify the strict construction claimed by the insurer, the terms of the policy prepared by the defendant ought to specifically so provide. The construction claimed by the defendant would convert all cases of this character into a contest as to the exact words spoken when permission was secured, and to an attempt upon the trial to convert by refinement any use of the car into

a departure sufficient to annul the permission granted.''.

Continuing our reference to the *Karton* case, *supra,* this court in that case upheld the decision in the case of *Stovall v. New York Indem. Co.,* 157 Tenn. 301. In the *Stovall* case the driver got permission to use an automobile covered by a policy of insurance, for the purpose of driving persons around the City of Memphis, Tenn. After having secured permission, he drove the car on a special trip of his own, a considerable distance into Mississippi and while in Mississippi injured a person with the automobile. The court held that ''permission'' bound the insurance company, citing *Drewek v. Milwaukee Auto. Ins. Co.,* 207 Wis. 445. In the latter case it is contended that the term ''permission of the named insured'' was intended to cover persons using the automobile with the insured's consent in the first instance, regardless of the use such person thereafter made of the automobile.

It appears to us that if the assured in an automobile policy were able to limit the meaning of the word ''permission,'' both as to the length of time the permission be granted, as well as to where such automobile should be driven, and any nonobservance of such restrictions would relieve the insurance company of any liability, this would result in some absurd situations. If, for example in the instant case, at the expiration of one-half hour, Jefson was unable to have his haircut and reach home within that period of time, then somewhere en route the permission would expire and he would become a trespasser and would be guilty of a misdemeanor under the laws of the State as driving without the consent of the owner. We are inclined to believe that such restriction and limitation could not be placed on the permission given under the terms of the policy. Permission to use an automobile is either granted or it is not granted and we do not believe the

assured can limit the scope of such permission either as to time or place. We do not think the language of the policy admits of any such construction.

Plaintiff asks that this case be dismissed or affirmed with an assessment of 10 per cent damages, as provided by ch. 110, ¶ 215, sec. 87, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 104.087, known as the Practice Act. This suit was fully prosecuted and the appeal was not dismissed. Consequently, the said section does not apply.

For the reasons herein given the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and HALL, J., concur.