Herbert Muthart, for Use of Marjorie Allen Zitnik, Administratrix of Estate of William B. McInerney, Deceased, Appellee, v. William Burik et al., Defendants. United States Mutual Insurance Company, Appellant.

Gen. No. 43,248.

Heard in the third division of this court for the first district at the October term, 1944.

Opinion filed November 7, 1945. Rehearing denied November 26, 1945. Released for publication November 27, 1945.

BARRETT, BARRETT, COSTELLO & BARRETT, of Chicago, for appellant.

CATTELL & WALDRON, of Chicago, for appellee; AL-
FRED ROY HULBERT, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the
court.

United States Mutual Insurance Company issued to
Martin Burik a public liability automobile insurance
policy covering the operation of a Ford coupe auto-
mobile for the period from September 5, 1941 to Sep-
tember 5, 1942. Burik and his wife conducted a retail
grocery store and meat market at 10742 South Kedzie
avenue, Chicago. Herbert Muthart lived with his wife
and children at or near 101st street and Sacramento
avenue, Chicago. Muthart's home was about one and
one half miles northeast of Burik's store. These men
had been friends for a number of years. On Saturday
evening, June 20, 1942, Muthart went to Burik's store,
where he purchased groceries. He remained at the
store for three or four hours. The Buriks closed their
store at about 10:00 p. m. and, accompanied by Muth-
art, went to a lunchroom for dinner. They remained
there until about midnight, when they returned to the
store. Neither at the restaurant, nor previous to their
arrival, did Muthart or Burik drink alcoholic liquors.
Burik was either planning or engaged in the work of
strengthening the foundation of the store building. As
Muthart was not going to work at his regular employ-
ment the next day, he volunteered to help Burik. Burik
drove the automobile to and from the restaurant.
Upon their arrival at the store, he stated to Muthart:
"Take the car and drive home and come back in the
morning." Muthart replied: "All right." Muthart
drove away.

On Sunday, June 21, 1942, about 4:00 a. m., the car
being driven by Muthart near the intersection of 88th
and State streets in Chicago, struck William B. McIn-
erney, and as a result of the injuries thereby inflicted,
he died. At the time of the occurrence Muthart was

alone in the car. On July 11, 1942 Marjorie Allen Zitnik, administratrix of the estate of William B. McInerney, filed a complaint in the circuit court of Cook county against Burik and Muthart, asking damages. Martin Burik was sued as William Burik. He was served with a summons on July 11, 1942 and Muthart was served with a summons on July 13, 1942. On July 31, 1942 an appearance for Burik was filed by attorneys retained by the insurance company, and on August 3, 1942 an appearance by an attorney not retained by the insurance company was filed for Muthart. On October 8, 1943 the cause came on for trial, and on motion of plaintiff was dismissed as to William Burik. It was submitted for trial without a jury. The court found the defendant guilty, assessed plaintiff's damages at $5,000 and entered judgment therefor. An execution was returned unsatisfied, whereupon plaintiff filed an affidavit in garnishment, and a summons was served on the insurance company. The answer of the garnishee denied that there were any funds or property in its custody or control owing or belonging to Herbert Muthart. Issue was formed by plaintiff's traverse of the garnishee's answer. A trial before the court without a jury resulted in a judgment in favor of plaintiff and against the garnishee for $5,000, with a direction that the clerk incorporate in the judgment the additional sum to be arrived at by computing interest on $5,000 at 5 per cent per annum from October 8, 1943. The garnishee appeals.

We turn to a consideration of a motion to dismiss the appeal filed by plaintiff (appellee), which was taken with the case. On May 2, 1944 a judgment for plaintiff and against the garnishee in the sum of $5,000 was entered in the garnishment case. On June 13, 1944, pursuant to notice, a verified petition to vacate the judgment was filed by the garnishee. On June 15, 1944 plaintiff filed a motion to strike the petition on the ground that more than 30 days had elapsed between

the entry of the judgment in garnishment and the filing of the petition, and that the court was without jurisdiction to enter any order whatsoever. At the same time plaintiff filed a verified answer to the petition. On June 23, 1944 the court allowed the prayer of the petition, vacated the judgment of May 2, 1944 and re-entered the judgment. There was no appeal from the judgment of May 2, 1944 and no cross-appeal from that portion of the order of June 23, 1944, which vacated the judgment of May 2, 1944. Plaintiff urges that the trial court erred in vacating the judgment of May 2, 1944 and in re-entering the judgment from which the instant appeal has been perfected. Plaintiff suggests that by the re-entry of the judgment on June 23, 1944, she obtained all the relief she sought and that it was not necessary for her to appeal from the order vacating the judgment.

The petition filed by the garnishee was a motion in writing under sec. 72 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 196; Jones Ill. Stats. Ann. 104.072]. The filing of that motion was the commencement of a new suit in which the new issues presented were joined in by the plaintiff filing a motion to strike and also an answer to the petition. The issues were resolved after a hearing by a finding of facts by the court and a judgment thereon. A party not satisfied with a ruling on a motion under sec. 72 of the Civil Practice Act has a remedy by appeal, as an order vacating a judgment pursuant to a motion in the nature of a writ of error *coram nobis* is final and appealable. *Jerome v. 5019–21 Quincy Street Bldg. Corp.*, 385 Ill. 524. The court had jurisdiction of the subject matter. Plaintiff did not appeal from the order of June 23, 1944, which vacated the previous judgment, as the judgment was in her favor. Rule 35 of the Supreme Court outlines the procedure for the prosecution of a cross-appeal. As plaintiff did not attempt to follow this procedure, the omission cannot

be supplied by a motion to dismiss defendant's appeal. For these reasons plaintiff's motion to dismiss the appeal is denied.

Article 3 of the policy states:

"The unqualified word 'insured' wherever used (in coverages A and B and in other parts of this policy when applicable to such coverages) includes not only the named insured but also any person while using the automobile, and any person or organization legally responsible for the use thereof . . . provided further the actual use is with the permission of the named insured."

Coverage A relates to an obligation to pay liability arising from bodily injury, or death resulting therefrom, which was the basis of the original action in this case.

There was testimony that when Burik turned the car over to Muthart about midnight on June 20, 1942, he said: "As long as you are coming over to help me tomorrow you may as well take the car home. . . . You can bring the car back in the morning when you come over to help me. . . . Take the car and bring it home and come back in the morning." To this Muthart replied: "All right." Burik testified that the last time he saw the car that night was when Muthart drove it away from the store. The record is silent as to where Muthart went. Police officers testified that at about 4:00 a. m. Sunday, June 21, 1942, the fatal mishap occurred near the intersection of 88th and State streets, and that this point was approximately 32 blocks east and 19 blocks north of Burik's store. The place of the occurrence was approximately four miles east and one mile north of where Muthart lived. Defendant argues that the circumstantial evidence shows that Muthart first stopped the car at his home, where he left two bags of groceries he purchased at Burik's store, and that he then started

out on the journey which brought him to grief. We cannot agree with defendant that the evidence supports an inference that Muthart first stopped at his home. Defendant maintains that the undisputed evidence shows that Muthart had completed the journey to his home in the automobile which Burik loaned him for that purpose; that he thereafter drove it to the scene of the occurrence in the prosecution of an independent journey, on a mission personal to himself, which was wholly separate from and entirely unrelated to the objects and scope of the permitted use, and that under such circumstances he ceased to be an additional assured within the meaning of the omnibus coverage clause of the policy. Defendant places great reliance on *Byrne for use of King v. Continental Casualty Co.*, 301 Ill. App. 447. In that case and the more recent case of *Goff v. New Amsterdam Casualty Co.*, 318 Ill. App. 586, we gave consideration to the point now urged by the garnishee. The conversation between Burik and Muthart cannot be construed as confining the permission to use the car to driving it to Muthart's home, parking it while he slept, and then returning it in the morning. The court, on the record, was right in finding that at the time of the unfortunate occurrence, Muthart was driving the car with the permission of Burik.

Sec. 2 of the policy reads:

"Defense, Settlement, Supplementary Payments. It is further agreed that as respects insurance afforded by this policy (under coverages A and B) the company shall (a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company; (b) pay all premiums . . . on appeal bonds required in any

such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the insured in any such suit, all expenses incurred by the company, all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon. . . . The company agrees to pay the amounts incurred under divisions (a) and (b) of this section in addition to the applicable limit of liability of this policy.''

Clauses 5, 6, 7 and 8 of the ''Conditions'' of the policy read:

''5. Notice of Accident—Coverages A and B. Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the company at its home office, 2400 So. Michigan Avenue, Chicago, Illinois as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

''6. Notice of Claim or Suit—Coverages A. and B. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company's home office every demand, notice, summons or other process received by him or his representatives.

''7. Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits; and the company shall reimburse the insured for expenses, other than loss of earnings, incurred at the company's request. . . .

''8. Action Against Company—Coverages A. and B. No action shall lie against the company unless, as a

condition precedent thereto, the insured shall have fully complied with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the com-pany. . . ."

Garnishee argues that Muthart's failure to render the co-operation required by the terms of the policy, as well as his failure to keep, observe and perform certain conditions precedent and promissory warranties of the policy, is a complete defense to plaintiff's demand. Plaintiff urges that in the absence of any evidence to the effect that the insurance company notified the permissive user of his rights under the policy, defendant cannot be heard to complain that the permissive user failed to give the company all the co-operation demanded by it. It will be observed that the policy provides that the unqualified word "insured" wherever used therein, includes not only the named insured but also any person while using the automobile with the permission of the named insured. Therefore, whatever conditions precedent the named insured was required to fulfill, the additional insured was likewise required to fulfill. The usee cannot have any greater rights under the policy than the named insured. Plaintiff cannot recover against the insurance company if Muthart could not do so. Plaintiff stands in the shoes of Muthart.

Chief Justice CARDOZO, speaking for the New York court of appeals in *Coleman v. New Amsterdam Casualty Co.*, 247 N. Y. 271, said (275):

"The question remains whether the conduct of the assured was such a refusal to co-operate as to vitiate the policy. We are satisfied it was. Co-operation does not mean that the assured is to combine with the insurer to present a sham defense. Co-operation does mean that there shall be a fair and frank disclosure of

information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense. The attitude of this assured was one of willful and avowed obstruction. . . .

"The plaintiff makes the point that the default should be condoned, since there is no evidence that co-operation, however, willing, would have defeated the claim for damages or diminished its extent. For all that appears the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Co-operation with the insurer is one of the conditions of the policy. . . . There has been a failure to fulfill a condition upon which obligation is dependent."

In *Schneider v. Autoist Mut. Ins. Co.*, 346 Ill. 137, our Supreme Court said (139):

"In the instant case the policy provided that the assured, Allen, should aid the insurance company in securing evidence and in procuring the attendance of witnesses in any claim against him which was covered by the policy. The evidence shows that the only witness who knew about the accident was the assured, Allen, and he refused to go and testify on the trial. He was notified upon such refusal on two occasions that the insurance company would not defend and that it would withdraw from the case. There was no duty resting upon the insurance company to cancel the policy, as it might cover other accidents during its life and it had not expired at the time. The condition of the policy requiring cooperation on the part of the assured in the defense of the action brought against him by the injured party is one of great importance. Without the presence of the assured and his aid in preparing the case for trial the insurance company is handicapped and such lack of co-operation must result in making the action incapable of defense. The action of Allen in refusing to go to New York on the

trial of the case there prevented the insurance company from making any defense. Obviously he could not recover in a suit on the policy, and neither can the plaintiff here."

In considering the evidence as to notice of the claim and suit, and the assistance and cooperation of the additional insured, we note that police officers arrested Muthart at the scene of the occurrence; that subsequently there was an inquest; that he was held to await the action of the grand jury; that the action taken by that body is not disclosed; that Muthart was confined in the Cook county jail for a short time immediately after the occurrence; that he employed counsel to represent him; that he was released from jail and that shortly thereafter he and his family disappeared and were not heard from again. Muthart did not give written notice of the occurrence to garnishee, nor did he communicate to it such particulars as were sufficient to identify the insured as well as the witnesses, if any, and their addresses. He also failed to furnish information respecting the time, place and circumstances as required by paragraph 5 of the conditions of the policy. On Monday, June 22, 1942 garnishee learned of the occurrence and assigned its investigator, Robert Keebler, to the case. The latter heard that Muthart was in the county jail and several days after the occurrence he went there to see and talk to him. He did not find Muthart there, as he had been released from custody. On July 15, 1942 Keebler, accompanied by Lester Clark, a court reporter, went to the home of Muthart. He arrived there about 6:00 p. m. and remained until about 7:45 p. m. in an unsuccessful attempt to talk to Muthart. Keebler and Clark returned the following night and saw Muthart, his father and other members of his household. Although Muthart appears not to have questioned the identity of Keebler, nevertheless the latter fully identified himself by showing Muthart and his father blank company drafts, accident report

blanks, envelopes with the printed name and address of the garnishee on them and statements about other accidents which he had obtained from other persons he had interviewed in the regular course of his work. He then explained to Muthart he wanted to get the facts about the occurrence, what took place and what had happened. To this request, as well as to all questions asked during the interview, Muthart replied that he had nothing to say, as his lawyers had advised him to keep his mouth shut. Muthart's father was an active participant in the interview. Evidently, his view of the attitude his son should assume and maintain with respect to the garnishee's investigation was in accord with the son's representation of what his lawyers had instructed him to do, because he (the father) told Keebler that he had instructed his son to "keep his mouth shut" so long as Keebler and Clark were there and that there was not going to be any talking. Keebler did not take "No" for an answer, but persisted in his attempt to make the interview successful. He continued to ask questions and explained to Muthart that it was necessary that the company get his (Muthart's) report. However, Muthart declined to answer any questions, insisting directly and through his father that he had nothing to say and would not talk no matter how long Keebler remained there. Muthart did not identify his lawyer, nor suggest that Keebler talk with him, nor did he explain that any circumstances connected with any criminal charge caused him to believe that he should not talk, nor did he suggest that there were or could be any conditions under which he would co-operate with the insurance company by making a statement of the facts and circumstances of the mishap.

It will be further noted that the action of plaintiff was commenced on July 11, 1942; that both defendants were served with a summons on that day; that within a short time after the service of the summons on Muth-

art, he went to Burik's store and talked with Burik about the occurrence and the suit that had been commenced against them; that Burik instructed Muthart to go down to the office of the garnishee and make a statement; that Muthart did not do so; that about three months after the occurrence Keebler went to Muthart's home for the third time and found that he and his family had moved away; that inquiry among the neighbors and of Burik resulted in no information more certain than that Muthart had left the State and was reported to have gone to Nevada "to some place like Elko"; that Keebler was the only investigator assigned to the case; and that he did not receive any letter, memorandum, telephone call or communication of any kind from Muthart or from any person purporting to act on his behalf relating to the subject. It is apparent both from the conversation which Muthart had with Keebler, and from the action taken by Muthart's attorney, that he had resolved to make his own defense without regard to any policy obligation that the garnishee may have had to provide a defense for him. Presumably, Muthart's attorney represented him until judgment was finally entered against him. The record does not show that Muthart at any time requested the garnishee to carry out any claimed obligation to him under the policy. The record is silent as to whether the garnishee did or did not inform Muthart that there was an omnibus clause in the policy. The position of the garnishee at all times has been that the omnibus clause was not applicable, as at the time of the occurrence Muthart was not driving the car with the permission of Burik. The record shows further that the garnishee received a copy of the summons from its policyholder, Burik, which showed on its face that both the policyholder and Muthart were defendants; that the garnishee caused its lawyers to file an appearance and answer for its policyholder only; that the insurance company made an investigation of the occurrence

and obtained a copy of the coroner's transcript which showed the testimony of Muthart; that garnishee's own attorneys appeared at the inquest on behalf of Burik only; and that no disclaimer of responsibility of liability toward Muthart was made by garnishee.

The garnishee relies on *Whittle v. Associated Indemnity Corp.*, 130 N. J. L. 576; *Curran v. Connecticut Indemnity Co. of New Haven*, 127 Conn. 692; *Coleman v. New Amsterdam Casualty Co.*, 247 N. Y. 271; *Margellini v. Pacific Auto Ins. Co.*, 33 Cal. App. (2d) 93; *Schneider v. Autoist Mut. Ins. Co.*, 346 Ill. 137; *Patton v. Washington Ins. Exchange*, 288 Ill. App. 594, and other cases. Plaintiff relies on *Scott v. Inter-Insurance Exchange of Chicago Motor Club*, 267 Ill. App. 105, affirmed in 352 Ill. 572. We have carefully studied all of the cases cited. We are of the opinion that the *Scott* case is not applicable to the facts of this case, as in that case there was full co-operation by the named insured and by the additional insured. Muthart gave no statement and answered no questions so as to enable defendant to determine whether or not he was an additional insured. Had Muthart talked to defendant's representatives, the facts respecting the operation of the automobile would have been ascertained, and defendant could then have determined Muthart's status as an additional insured or otherwise. It is interesting to observe that par. 58(k), ch. 95½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 85.064 (11)], adopted at a special session and approved July 12, 1938, commonly known as the Financial Responsibility Act, defines a liability policy as a policy containing the omnibus coverage clause, extending the protection of the policy to persons who are driving automobiles with the permission of the named insured. In the instant case it is not claimed that the record shows that Muthart did not know of the existence of the omnibus coverage clause. Plaintiff says: "It is doubtful that Muthart ever knew that there was pro-

tection afforded him by the policy." If there was a reasonable excuse for Muthart's failure and refusal to comply with the policy conditions, the burden of proving that excuse rested upon plaintiff. *Hoffman v. Employer's Liability Assur. Corp.,* 146 Ore. 66; *Houran v. Preferred Accident Ins. Co. of New York,* 109 Vt. 258. Muthart was alone at the time of the mishap. It is clear that he failed to co-operate with defendant in its investigation of the occurrence. Burik did not know the facts. Muthart was the only one who knew the facts of the case. It is obvious that under the facts disclosed by the record Muthart could not recover in a suit on the policy were he to pay the judgment, and neither can plaintiff, who stands in his shoes.

The judgment of the circuit court of Cook county is reversed and the cause remanded with directions to enter judgment for the garnishee, United States Mutual Ins. Co., a corporation, and against plaintiff.

*Judgment reversed and cause remanded with directions to enter judgment for garnishee.*

KILEY, P. J., and LEWE, J., concur.