**STANDARD ACCIDENT INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**NEW AMSTERDAM CASUALTY COMPANY et al., Defendants-Appellees.**

No. 12016.

United States Court of Appeals
Seventh Circuit.

Dec. 3, 1957.

Charles D. Snewind, Chicago, Ill., for appellant.

Carl E. Abrahamson, Chicago, Ill., for appellees.

Before DUFFY, Chief Judge, and FINNEGAN and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

This is an action for a declaratory judgment brought by Standard Accident Insurance Company against New Amsterdam Casualty Company, et al., for a declaration of the rights and obligations of the respective companies under policies of automobile liability insurance issued by Standard to R. Lenn Franke and by New Amsterdam to Kelliher, Inc.

R. Lenn Franke, who was driving the automobile insured under the New Amsterdam policy; Nash Dowdle, who was riding in the automobile with Franke and who was using the Kelliher car with the permission of Virginia Kelliher, a vice-president of Kelliher, Inc., (and who is also Dowdle's sister); and Josephine Klotz, who was injured in an accident involving this automobile, were made parties defendant to the action because of their interest in the subject matter, but no affirmative relief was sought against them.

The case was tried to the court without a jury, and findings of fact and conclusions of law were made favorable to New Amsterdam and this appeal is from the judgment rendered thereon.

Among other things the trial court found "that the actual use and operation of said automobile by R. Lenn Franke, Jr., was not with the permission of Kelliher, Inc., the named insured of the New Amsterdam Casualty Company," and concluded that New Amsterdam was not obligated or liable to pay the judgment rendered against him.

The facts disclosed that Kelliher, Inc. was the named insured in the New Amsterdam policy and was the owner of the 1949 Pontiac convertible automobile described therein. Virginia Kelliher, as an officer of this corporation, had proper possession and control of the Pontiac and the right to use it in the business of the company and for her own use, and had authority to permit its use by others. On the date of the accident in question, Nash Dowdle called his sister, Virginia Kelliher, told her that "he had a date that evening" and asked if he could "borrow

the car for that date." She gave him permission to use the car and delivered the keys to him. He took the car from his sister's residence and drove to Franke's place of business since Franke was going on the date with him. The two first went to a print shop in the immediate vicinity of Franke's place of business where Dowdle transacted some business and then drove to meet the two girls they were going to take out to dinner. All this time the automobile was driven by Franke at Dowdle's request, with Dowdle sitting beside him in the front seat, because, as Dowdle testified later, Franke was better acquainted with the neighborhood. It collided with another automobile with resulting personal injuries to Josephine Klotz. She subsequently obtained judgment in the Circuit Court of Cook County, Illinois, in the sum of $4000 against both Dowdle and Franke. The evidence further shows that Dowdle had on previous occasions been permitted to use the car in question for his own "social engagements" and that he had allowed Franke to drive on some of those occasions. Franke is an acquaintance of the Kelliher family. There is no evidence that Virginia Kelliher knew that Franke had driven the car before. She testified that she did not know that Franke was to accompany Dowdle.

The New Amsterdam policy in force at the time of the accident contained the following clause:

"With respect to the insurance for bodily injury and property damage liability, the unqualified word 'insured' includes the named insured and also includes any person while *using* an owned automobile or a hired automobile, and any person legally responsible for the *use* thereof, *provided the actual use of the automobile is by the named insured, or with his permission.*" (Our emphasis.)

The Standard policy in force at the time of the accident covered Franke as the "named assured" and as owner and operator of a certain automobile (not the one involved in this case) and, among other things, agreed to pay on his behalf damages recovered by any person in an accident involving any other automobile driven by Franke. It also provided that this latter "shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobile or otherwise." It is conceded that the Standard policy afforded Franke complete protection as the driver of the 1949 Pontiac in the accident in question, and that the New Amsterdam policy afforded similar protection to Dowdle in his use of the car.

The ultimate issue is whether or not Franke was an additional insured of New Amsterdam under the "omnibus" provision of its policy above set out. The question is, therefore, whether or not Franke's use of the car brought him within the provision of the New Amsterdam policy affording protection if *"the actual use of the automobile is by the named insured or with his permission."* (Our emphasis.) Both parties agree that the construction of the New Amsterdam policy is to be governed by the law of Illinois and that there is no decided case in point.

In the case at bar, we have a second permittee who is sought to be classified as the additional insured. It is a situation where the first permittee is properly permitted to use the car for a specific purpose, and while using the car for such purpose requests another to drive the car for him in pursuance of that purpose, *viz.:* a social engagement, the first permittee riding in the front seat of the car with the second permittee driver. Did the first permittee have authority to subdelegate the operation of the car to another, and in so doing place the operator in the position of using the car with the implied consent of the named insured owner?

Appellant makes marked reference to an annotation in 160 A.L.R. 1195 under the general subject entitled "Omnibus clause of automobile liability policy as covering accidents caused by third person

who is using car with consent of permittee of named insured." Particular reliance is placed upon the following generalization at page 1206:

"4. The initial permission given by the named assured to the original permittee includes, according to the better view, the use of the automobile by the second permittee where in doing so the second permittee serves some purpose, benefit or advantage of the first permittee. This is the case if the original permittee is riding in the car * * * or if the car is driven in his interest or for a purpose mutual to him and the second permittee."

Quoting further:

"It should be noted in this connection that the liability of the insurance company under the omnibus clause may be invoked upon the liability of either the first or the second permittee * * * if the claim is based upon the fault of the second permittee, the problem to be decided is whether or not he used the automobile with the insured's 'permission.'"

Appellee finds support in a quotation from Appleman, Insurance Law and Practice, Vol. 7, Sec. 4360, pp. 157–158, as follows:

"The ordinary rule is usually stated to be that the bailee of an automobile having possession with the permission of the named insured cannot validly permit a third person to operate the vehicle so as to bring such third person within the policy protection; such person occupying the same position as would a volunteer or inter-meddler."

However, Appleman states further in the same section from which the above quotation is taken, that "if it appears that the insured had given either express or *implied permission* for such delegation *or it fell within the scope of the permission granted,* protection would be afforded." (Our emphasis.) Appleman, supra, Vol. 7, Sec. 4360, p. 158.

A careful review of the cases cited by the annotator and the text writer shows there is much authority for all of these general propositions. Both cite Aetna Life Ins. Co. v. Chandler, 1937, 193 A. 233, 89 N.H. 95, in which the Supreme Court of New Hampshire found implied permission to delegate the use of a car where the permittee, being ill, had let another person drive the car to obtain medicine. While on this errand the third person was involved in an accident. This driver was unknown to the insured owner of the car and had no express permission to use the car. From these circumstances the court held that permission could be *implied* since the insured had intended the car to be used for the personal needs of the first permittee. Also, in the case of Odden v. Union Indemnity Co., 1930, 156 Wash. 10, 286 P. 59, 72 A.L.R. 1363, coverage was extended under an omnibus clause to a person who drove the car of the insured with the permission of the first permittee where there was evidence that the insured knew that the permittee was allowing others to drive and had not objected.

Typical of the authorities denying extended coverage under an omnibus clause is the case of Card v. Commercial Casualty Insurance Co., 1936, 20 Tenn.App. 132, 95 S.W.2d 1281, at page 1284, where the court states:

"When the car is being driven by a person without the actual permission (either express or implied) of the named assured, then the driver is not an additional assured. Even if the person is present in the car who had permission to use it (but is not driving), there is no coverage under the policy. In that case the person who was given permission is not an 'additional assured,' for the reason that the named assured must personally exercise his discretion in selecting the driver. Permission to use means permission to operate."

The Tennessee Court of Appeals in this case goes on to describe implied permission to drive as arising only by an act of the *named insured* who was granted

authority to select additional insureds under the policy's omnibus clause. The court placed emphasis on the fact that the *insurer* selected the insured as one who was a good risk and also as one who could be trusted to use discretion in the selection of a driver for the car.

Appellee relies strongly on the case of Aetna Casualty & Surety Co. v. De Maison, 3 Cir., 1954, 213 F.2d 826. In this case the father owned an automobile insured under a policy in the Merchants Indemnity Company of New York, and the policy contained the usual omnibus clause. He gave his son permission to drive the insured's car to a theater in Jenkintown, a suburb of Philadelphia, but instead he drove to a tavern in Ardsley, Pennsylvania, and there met Mrs. De Maison. They decided to drive to Willow Grove, some three or four miles beyond Ardsley, to dine. The son permitted Mrs. De Maison to drive the car while he was riding with her and the accident occurred en route, with resulting damage to the automobile with which it collided. The owner of the damaged automobile brought suit against Mrs. De Maison. At the time of the accident Mrs. De Maison's husband owned an automobile which was insured by Aetna Casualty & Surety Company, the policy containing a clause insuring Mrs. De Maison in the event she was involved in an accident while driving another car, with a further provision that the policy applied only as excess insurance above whatever public liability insurance might cover such other car. The case arose under Pennsylvania law and, as here, the Court of Appeals for the Third Circuit could find no Pennsylvania decisions upon the precise question involved. Judge Kalodner, for the court, noted that pursuant to Pennsylvania decisions, when an automobile is involved in an accident while being operated by one other than the insured, "* * * 'there is no * * * liability if at the time of the accident the car is being driven at a time or place or for a purpose not authorized by the insured.'" Id. at 831. The court noted that: "What we are here concerned with

is the critical issue as to whether a third person is entitled to the status of an additional assured when he is allowed to drive a vehicle by one who has been authorized by the insured owner to use it but who has not been given express or implied permission to delegate his authority." Id. at 830. The court in thus framing the issue negated the possible existence of implied permission for the delegation and, in effect, cut off inquiry as to the existence of permission.

The following year the same court again passed upon the authority of a permittee to delegate the permission to drive an insured's car in the case of Maryland Casualty Co. v. Marshbank, 3 Cir., 1955, 226 F.2d 637. This case also was determined under Pennsylvania law. A named insured under a policy gave permission to his son and three of the son's friends to drive the car to a theater. One of the son's friends drove the car with the consent of the son and an accident occurred while he was driving. The court held that the son's friend was an additional insured under the omnibus clause of the policy on the ground that the use to which the car was being put at the time of the accident was the use the named insured had agreed to permit. In referring to the De Maison case of the previous year the court commented: "* * * it is clear that in that case the actual use to which the automobile therein question was being put at the time of the accident was not the use for which permission had been given." Id. at 640. The court said further: "Where, as in the De Maison case, there has been a deviation at the time of the accident from the particular use for which permission was given the user at that time does not come within the policy definition as an additional insured. * * * It will be seen that the distinction between the use and operation of the automobile, which is crucial in this case, was of no legal significance in the De Maison case." Id. at 640.

Recently, a Louisiana Court of Appeals allowed extended coverage in a situation

quite similar to the one in this case. Brooks v. Delta Fire & Casualty Co., La. App., 1955, 82 So.2d 55. There permission was granted a daughter, Mrs. Moreau, by the insured owner, her father, Dr. Pierce, to use the car to drive to New Orleans for the purpose of taking a medical examination. Mrs. Moreau was accompanied by her infant child and a friend, Miss Dietz. On the return trip, the baby required Mrs. Moreau's attention and the friend was asked to drive. An accident ensued. The evidence showed that Dr. Pierce, the owner, had forbidden his daughter to allow anyone else to drive the car. The court discounted this prohibition stating:

"[T]he owner of the car knew that his daughter and her infant child was to be accompanied on the trip to New Orleans by her friend, Miss Dietz. Here the transfer of drivership took place when the infant's crying required the attentions of its mother. * * * Surely it was contemplated that for this reason, or even were the daughter tired or beset by headache or for any other reason was unable or unwilling to continue driving, that Miss Dietz would take the wheel so that the journey could continue * * *. Under these circumstances, despite the alleged general instructions given at some indefinite time in the past not to allow others to drive, we feel that special permission may be fairly implied consenting for the original permittee to let her companion drive." Id. at 58.

It thus appears that the Third Circuit laid down the Pennsylvania rule based on a strict construction of the omnibus clause where there is a substantial deviation from the designated permitted use. The Louisiana rule in the Brooks case, supra, is said to arise from a "liberal" construction by their Supreme Court of the "permission" in the omnibus clause.

■ Here, we are required to consider what approach the Illinois courts might make to this question. The Illinois Act known as the "Motor Vehicle Law", Ill.

Rev.Stat.Ch. 95½, as amended in 1951, fixes requirements as to motor vehicle policies in Section 58k, as follows:

"* * * (a) Said policy shall insure the person named therein and *any other person using or responsible for the use of said motor vehicle* or vehicles *with the express or implied permission* of said insured * * *." (Our emphasis.)

"[This] so-called statutory omnibus, or extended coverage, or additional insured clause" is deemed written into the New Amsterdam policy by operation of law. Konrad v. Hartford Accident & Indemnity Co., 1956, 11 Ill.App.2d 503, 514, 137 N.E.2d 855, 860. This statutory provision differs little from the one in the New Amsterdam policy, but does specifically recognize that the "permission" for the use of the car may be either "express or implied."

■ It should be noted here that Illinois has adopted and adhered to the so-called initial permission rule. In the Konrad case, supra, the court said:

"When the named insured has initially once given permission to another person to use his motor vehicle but that person deviates from the permission granted, Illinois follows the so-called initial permission rule to the effect that the user need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is with 'permission', under the omnibus clause, though that use may be for a purpose not contemplated by the named insured when he parted with possession of the vehicle; if the original taking by the user is with the named insured's consent, every act of the user subsequent thereto while he is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of permission; a deviation from the permission is immaterial; the only essential thing is that permission be given in the first instance; the

rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use; this is the view followed also in Connecticut, Louisiana, Massachusetts, New Jersey, Tennessee, Wisconsin, and probably North Dakota, Oregon, Oklahoma, Florida, Indiana, and West Virginia, and is the weight of authority." (citations following.) 11 Ill.App.2d at pages 514–515, 137 N.E.2d 861.

To the same effect see Muthart for use of Zitnik v. Burik, 1945, 327 Ill.App. 170, 63 N.E.2d 635, and Jefson, for use of Alber v. London Guarantee & Accident Co., 1937, 293 Ill.App. 97, 11 N.E.2d 993.

However, Illinois does not extend this initial permission rule to carry with it authority for a permittee to let another use the car when the owner expressly forbids such delegation. Cocos v. American Automobile Ins. Co., 1939, 302 Ill. App. 442, 24 N.E.2d 75. In the Cocos case, the owner gave his employee permission to use his car with the express limitation that it was to be used solely for business purposes and by no other person. The employee gave his son permission to use the car for a Christmas night visit to his uncle and an accident occurred through his negligence. The court held this prohibited use was not with the permission of the owner, and that the policy did not cover the liability of the son.

In the instant case, the first permittee, Dowdle, was properly given permission to use the insured car for his own social purpose. While so engaged in such use of the car he requested the second permittee to drive it and in so doing he did not deviate from the use for which permission had been granted. Under these circumstances and in view of the liberal policy adopted by the Illinois courts above referred to, it may be fairly concluded that in the initial permission given Dowdle to use the car there was an implied permission for him to allow Franke to drive the car.

▮ We are of the opinion, therefore, that in Illinois one to whom the named insured has given the initial permission to use an automobile for a specific purpose has implied authority to permit the use of the automobile to another, where in doing so the second permittee uses the car for the same purpose for which the initial permission was given, the original permittee being present in the car with him. We hold that Franke was using the automobile described in the New Amsterdam policy with the implied permission of the named insured; that Franke was an additional insured under the New Amsterdam policy; and that New Amsterdam is obligated and liable to pay the judgment rendered against Franke. In view of this determination we need not pass on other questions raised by appellant.

For the reasons stated the judgment of the district court is reversed with directions to proceed in accordance with this opinion.

FINNEGAN, Circuit Judge (concurring).

Justice Stone might well have been describing our position as a transitory Supreme Court for Illinois when he wrote for the majority in Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9, "In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment * * * (cases collected). When such exceptional circumstances are not present, denial of that opportunity by the federal courts merely *because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state,* would thwart the purpose of the jurisdic-

**854**

tional act." (Emphasis supplied.) See also Preston v. Aetna Life Ins., 7 Cir., 1949, 174 F.2d 10.

We are called upon to make a decision in this diversity of citizenship case where the law of the State of Illinois is nonexistent. Everyone involved, court and counsel, cheerfully agree we are confronted with a question of local law, only the local law is conspicuous by its absence. Moreover, district judges are assumed to know the local law in their districts and here we reverse the lower court, though I think rightly so. It has been suggested that federal courts be empowered to certify questions of state law to state courts and obtain a response. See Hart and Wechsler, The Federal Courts and The Federal System 632 (1953) and Vestal, The Certified Question of Law, 36 Iowa L.Rev. 629 (1951) concerning Fla.Stat. Ann. §§ 25.031–25.032 "authorizing the Supreme Court of Florida to answer questions certified by federal appellate courts." Ibid.