William G. Konrad, Public Administrator of Estate of Robert Lyle Jones, Deceased, for Use of Bernard Kelley, a Minor, by Kathleen Benson, His Mother and Next Friend, Plaintiff-Appellant, v. Hartford Accident & Indemnity Company, Defendant-Appellee.

Gen. No. 10,948.

Second District.

October 22, 1956.

Rehearing denied November 20, 1956.

Released for publication November 20, 1956.

504

Robert E. Dolph, and Richard C. Hamper, both of Aurora, for plaintiff-appellant; Robert E. Dolph, and Richard C. Hamper, both of Aurora, of counsel.

Allen, Matthews, Jordan & Dean, of Aurora, for defendant-appellee; Everett Jordan, and Joseph T. Suhler, both of Aurora, of counsel.

JUSTICE CROW delivered the opinion of the court.
This is an appeal in a garnishment action from a judgment entered by the Circuit Court of Kane County, finding the issues in favor of the garnishee-

defendant, Hartford Accident & Indemnity Company, a corporation. The action was brought for the use of Bernard Kelley, a minor, by his mother and next friend, against the garnishee-defendant, to collect a final judgment in the sum of $16,000, theretofore entered in the Circuit Court of Kane County, in a prior personal injury action brought by the minor, by his mother and next friend, against William G. Konrad, public administrator of the estate of Robert Lyle Jones, deceased, the administrator being the nominal plaintiff in this garnishment action for the use of Bernard Kelley. It is based upon an insurance policy issued by Hartford Accident & Indemnity Company, garnishee-defendant, to cover all vehicles of the Q Candy and Cigar Co., a corporation, the named insured, which was the employer of Robert Lyle Jones.

There is no dispute about the essential facts. There was a stipulation in this garnishment action that the transcript of the testimony in the prior personal injury action might be introduced in evidence in this case, that the insurance policy might be introduced, and that it covered the truck in question, subject to the terms and conditions of the policy, that the pleadings in the prior personal injury case might be introduced, and that certain other facts were agreed. From the stipulation it appears that Robert Lyle Jones, the deceased, was hired by the Q Candy and Cigar Co., a corporation, of Aurora, by its president, Edward Baratz; that he was hired approximately ten days prior to the date of the accident; for the first nine or ten days a supervisor went with the deceased on the route instructing him in his duties; at the time the deceased was hired he was informed by Mr. Baratz that at the end of the training period if he was satisfactory he would be assigned a truck; he must sign for the truck and all merchandise therein; and the truck must be kept locked at all times when the

driver was not in the truck. He was further informed that if the truck was taken at the end of the day to his home, he would be responsible for the truck and the merchandise when he checked in the next morning; the truck must be left in a garage or the driveway of his home; if the truck was kept in the driveway the merchandise must be removed from the truck, the truck must be kept locked, and could not be used for any purpose except business. The day of the accident was the first day that the deceased, Robert Lyle Jones, had the truck alone; prior to that time the route supervisor who had been training him had taken the truck and kept it overnight; on the day of the accident the deceased, Robert Lyle Jones, was given possession and control of the truck by the Q Candy and Cigar Co. under the terms and conditions as heretofore set forth; the route supervisor informed the deceased that if he had a garage the truck must be placed in the garage at night, that if he had no garage it must be placed in the yard and kept locked until the next morning, and he was specifically informed that under no circumstances was the truck to be used for any purpose except business; he was to prepare a daily report of the merchandise on hand and the merchandise sold, and on this occasion would have had to make a report to the checker in the warehouse of the company the next morning; Robert Lyle Jones was given the keys to the truck by Baratz, or the supervisor; and the company paid all the expenses of the truck, including gas and oil, and including private garage expense if the driver rented a garage.

Such of the evidence in the original personal injury action as is abstracted here is, so far as now relevant, to the effect that on October 4, 1951 Robert Lyle Jones was a driver-salesman for the Q Candy and Cigar Co., was assigned the truck in question, which was owned by the company, the driver-salesmen come in (to the

company office or warehouse) about 7 a.m. and are finished about 5 p.m., and their hours depend on what stops they make; the collision concerned occurred October 4, 1951 shortly before midnight on Jericho Road, somewhere near Aurora; Jones had invited Kelley (and another party), acquaintances, to get in the truck, saying he'd give them a ride home, though Jones apparently took them on a ride to see how fast the truck would go, evidently over Kelley's protests, and the collision occurred during the course of the ride; Jones had that day brought the truck back to his home a few minutes before 5 p.m., ate supper, sorted his merchandise, took it back to the truck, went downtown in the truck, and came back home at 9:30 p.m.; the ride with Kelley and the collision occurred later that evening.

The insurance policy is called "Comprehensive General Automobile Liability Policy"; the Q Candy and Cigar Co., a corporation, is the named insured; the "coverage" is, for bodily injury liability, "$25,000.00 each person"; it refers to an endorsement described as "Illinois truck filing A–1093 A–1235", which we shall set out separately hereinafter; under "insuring agreements", "I—Coverage A Bodily injury liability" reads: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person and caused by accident . . ."; also under "insuring agreements", it provides: "III—Definition of insured.—The unqualified word 'insured' includes the named insured and also includes . . . (2) under coverages A . . . any person while using an owned automobile, . . . and any person . . . legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission . . ."; under "declarations" there is a place to state the "purpose of use" of the vehicles covered, but as to the "owned automobiles" which are

508

listed and which include the truck here concerned there is nothing stated under "purpose of use," although as to what are called "hired automobiles" the "purpose of use" as to one is stated as "commercial" and as to another "pleasure and business"; under "conditions", paragraph 3—"Definitions," (e) "purposes of use," the terms "commercial" and "pleasure and business" are defined; under "conditions," paragraph 8—"financial responsibility laws" reads: "Such insurance as is afforded by this policy for bodily injury liability . . . shall comply with the provisions of the motor vehicle financial responsibility law of any state . . . which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use . . . of any automobile insured hereunder to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy . . . ."

Attached to and forming a part of the policy is an "endorsement for motor carriers policies for bodily injury liability . . . under section 16 of the Illinois Truck Act," which, so far as relevant, reads: "The policy to which this endorsement is attached is a motor vehicle bodily injury liability and property damage liability policy, and is hereby amended to assure compliance by the Insured, as a carrier, with Section 16 of 'The Illinois Truck Act,' and the pertinent rules and regulations of the Department of Public Works and Buildings of the State of Illinois.

"In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby agrees to pay any final judgment recovered against the insured for bodily injury to . . . any person . . . resulting from the operation, maintenance or use of the motor vehicles described under the policy and subject to the 'Illinois Truck Act' by reason of the design or use of such vehicles, subject, however, to the limits of liability set forth herein.

509

"Any person . . . who has secured such judgment . . . shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. . . .

"The liability of the Company under this endorsement extends to such losses, damages, injuries, or deaths whether occurring on the route or in the territory authorized to be served by the Insured or elsewhere within the boundaries of the State of Illinois.

"The liability of the Company under this endorsement on each described motor vehicle shall be a continuing one, notwithstanding any recovery hereunder, and on all such described motor vehicles shall be limited to the following amounts:

"$5,000.00 limit for bodily injuries to or death of one person; . . .

"Nothing contained in the policy or any other endorsement thereon, nor the violation of any of the provisions of the policy or of any endorsement thereon by the Insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment."

It is the plaintiff-appellant's theory, in substance, that the trial court erred and should have entered judgment against the garnishee-defendant for $16,000 and interest at 5% since May 27, 1953, because: (1) the court did not apply what the plaintiff says is the public policy of Illinois regarding the "omnibus clause" of automobile liability policies; (2) the court did not take into consideration that financial responsibility is a statutory requirement in the case of use of a truck and that that fact implements the public policy concerning the "omnibus clause"; and (3) under the "omnibus clause" of this policy, the use at the time in question of the truck by Robert Lyle Jones was with the permission of the Q Candy and Cigar Co., the named insured, within the terms and conditions of the

510

policy, and Jones was, therefore, an insured or additional insured thereunder.

The garnishee-defendant-appellee's theory is that Jones, the driver of the truck, at the time of the accident had parked the truck in accordance with his instructions, and subsequently took it for his own pleasure; at the time of the accident Jones was driving the truck without the permission of the named insured, the owner, Q Candy and Cigar Co., either express or implied, within the terms and conditions of the omnibus clause, and was, therefore, not an insured or additional insured thereunder; and, hence, that the judgment finding the issues for the garnishee-defendant was correct.

Under the insurance policy the fundamental obligation of the garnishee-defendant insurer is (within the policy limits of liability) "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person and caused by accident . . ."; or, as the endorsement thereto says, ". . . to pay any final judgment recovered against the insured for bodily injury to . . . any person resulting from the operation, maintenance or use of the motor vehicles described under the policy and subject to the Illinois Truck Act . . . ."

The unqualified word "insured," as used therein, includes not only the named insured, Q Candy and Cigar Co., a corporation, but also "any person while using an owned automobile, . . . and any person . . . legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission . . . ." That is the so-called omnibus, or extended coverage, or additional insured clause.

Further, such insurance as is afforded by the policy —"shall comply with the provisions of the motor vehi-

511

cle financial responsibility law of any state . . . which shall be applicable with respect to any such liability arising out of the ownership, maintenance, or use . . . of any automobile insured hereunder to the extent of the coverage . . . required by such law . . . ." Sec. 42–11 of the Motor Vehicle Law, Ch. 95½, Ill. Rev. Stats. 1951, par. 58k, provided that: "A motor vehicle liability policy as said term is used in this Act, shall be taken to mean a policy of liability insurance issued by an insurance carrier . . . which policy shall meet the following requirements: . . . (2) Said policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle or vehicles with the express or implied permission of said insured . . . ." Also, under par. 58k,—"Every motor vehicle liability policy . . . accepted as proof under this Act shall be subject to the following provisions, whether or not contained therein: . . . (f) An insurance carrier which has issued a motor vehicle liability policy . . . meeting the requirements of this act shall, upon the request of the insured therein, deliver to the insured for filing, or at the request of the insured shall file direct, with the Secretary of State, an appropriate certificate showing that such policy or policies have been issued, . . . ." Such a policy of liability insurance is one of the alternate methods of making proof of financial responsibility under that act, and such proof may be made by filing with the Secretary of State the certificate of the insurance carrier that it has issued such policy: par. 58 (e). Such proof of financial responsibility is required in the event of the suspension or proposed suspension by the Secretary of State of the registration certificates and license plates issued for a motor vehicle in the name of a person whose operator's or chauffeur's license has been revoked, or whose driving privileges have been suspended, or in the event of a suspension or proposed suspension of a

person's, operator's or chauffeur's license: pars. 58 (b), 58 (c), 58 (l), 35 (j). Proof of such financial responsibility may be made voluntarily by or on behalf of any person: par. 58 (f). The clause in the policy that it "shall comply with the provisions of the motor vehicle financial responsibility law of any state . . . to the extent of the coverage . . . required by such law . . ." presumably refers to that Motor Vehicle Law, among possibly other things, and evidently constitutes, in substance, a voluntary making, in advance, of proof of financial responsibility thereunder, subject to the ministerial or clerical duty on the insurer, upon the request of the insured, to deliver to the insured for filing or to file direct with the Secretary of State a certificate showing that the policy had been issued: Cf. Landis for use of Talley v. New Amsterdam Casualty Co. (1952), 347 Ill. App. 560, pet. for leave to appeal denied, 351 Ill. App. xiv.

██ Under par. 58k thereof—"(2) said policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle or vehicles with the express or implied permission of said insured . . . ." That is the so-called statutory omnibus, or extended coverage, or additional insured clause, which has, in effect, evidently been here voluntarily adopted by the insurer; statutory provisions applicable (either mandatorily or by voluntary adoption) to a contract of insurance, and in force at the time of the making thereof, form a part of such contract and should be construed in connection with the policy: 22 I. L. P., p. 209. There is not much difference between that and the omnibus clause written in the policy itself, except that the omnibus clause in the policy says "actual" use, whereas the statute says simply "using," and the policy says merely "permission," whereas the statute says "express or implied" permission. It has been said, however, that, so far as the particular problem presented here is concerned,

the courts have not so far generally attributed any particular significance or importance to "actual use" as distinct from "using," and no case had so far been found by the editors in which the result turned on any asserted distinction between the two terms: 5 A. L. R. (2), p. 607; and we've been referred to no Illinois cases, nor have we found any, making a distinction. Further, there can hardly be any doubt, and the defendant apparently acquiesces, that the term "permission," even if standing alone, includes, in this connection, implied as well as express permission: 5 A. L. R. (2), p. 608; Goff v. New Amsterdam Casualty Co. (1943), 318 Ill. App. 586. The statutory omnibus clause, in any event, must be, under the circumstances here, considered as voluntarily adopted by the insurer and written into this policy, and if there be any real differences between that and the similar clause stated in the policy, which we doubt, the statutory omnibus clause must control.

██ The first basic question, here, is: was Robert Lyle Jones a person using or responsible for the use of this motor vehicle with the express or implied permission of the named insured, Q Candy and Cigar Co., a corporation, under the omnibus clause, and was he himself hence an insured or additional insured under this policy? We think he was.

██ When the named insured has initially once given permission to another person to use his motor vehicle but that person deviates from the permission granted, Illinois follows the so-called initial permission rule to the effect that the user need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is with "permission," under the omnibus clause, though that use may be for a purpose not contemplated by the named insured when he parted with possession of the vehicle; if the original taking by the

user is with the named insured's consent, every act of the user subsequent thereto while he is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of permission; a deviation from the permission is immaterial; the only essential thing is that permission be given in the first instance; the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use; this is the view followed also in Connecticut, Louisiana, Massachusetts, New Jersey, Tennessee, Wisconsin, and probably North Dakota, Oregon, Oklahoma, Florida, Indiana, and West Virginia, and is the weight of authority: 5 A. L. R. (2), pp. 622, 624, 629, ff.; Jackson for use of Schaer v. Bankers Indemnity Ins. Co. (1934), 277 Ill. App. 140, pet. for leave to appeal denied, 277 Ill. App. xvi; Karton v. New Amsterdam Casualty Co. (1935), 280 Ill. App. 201; Jefson for use of Alber v. London Guarantee and Accident Co., Ltd. (1937), 293 Ill. App. 97, pet. for leave to appeal denied, 293 Ill. App. xlvi; Landis for use of Talley v. New Amsterdam Casualty Co. (1952), 347 Ill. App. 560, pet. for leave to appeal denied, 351 Ill. App. xiv. There are, however, outside of Illinois, at least two other possible rules applicable in such a situation. One is the so-called strict or conversion rule, under which, for the use of the vehicle to be with the permission of the named insured, under the omnibus clause, the permission must have been given not only to the use in the first instance, but also to the particular use being made of the car at the time in question,—the use must be for a purpose reasonably within the scope of the permission given, during the time limits expressed, and within the geographical limits contemplated. This is a minority view, has attracted the least following, and

has evidently been applied only in Maine, Michigan, and possibly New Hampshire: 5 A. L. R. (2), pp. 622, 625. The other is the so-called moderate, or minor deviation rule, under which a slight deviation from the scope of the permission granted will not exclude the user from the coverage under the omnibus clause, but a material deviation will. This has been followed in some other jurisdictions, such as Georgia, Kentucky, Ohio, Oklahoma, Pennsylvania, Texas, Washington, and probably Idaho, Minnesota, and Virginia, but is obviously very difficult of practical application: 5 A. L. R. (2), pp. 622, 625.

In Jackson for use of Schaer v. Bankers Indemnity Ins. Co., supra, in which the Supreme Court denied leave to appeal, the named insured, about 1:30 a.m., gave Jackson, the user of his car, permission to drive a guest of the named insured from his apartment on the north side of Chicago to the guest's home in Berwyn, Jackson to return with the car in time for the named insured to go to Lake Bluff the following morning (of the then same day); Jackson took the guest to Berwyn, returned to Chicago, and at about 5 a.m. that morning was involved in an accident at 51st and Cottage Grove, on the south side of Chicago; the Court held such user was with the permission of the named insured, under the omnibus clause, Jackson was an additional insured, and the insurer was subject to garnishment on a judgment theretofore recovered against Jackson. The Court referred, among others, to Stovall v. New York Indemnity Co., 157 Tenn. 301, and, at p. 154, quoted, with approval, the following from that case:

" 'It is our opinion that the words "providing such use or operation is with the permission of the named assured" were intended to exclude from the protection of the policy a person who should take the automobile and use it without permission or authority *in the first*

516

*instance.* If, however, the automobile covered by the policy is delivered to another for use with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, *regardless of whether* the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession.' "

In Karton v. New Amsterdam Casualty Co., supra, the named insured, about 12:30 a.m., gave permission to Weiss, the user, her escort of the evening, to take her car to go to his home,—4 or 5 blocks away,—and to bring it back to her in the morning of that day; Weiss did not go to his home, but drove around Chicago, and at 5:30 a.m., some 5 miles from the named insured's home, was involved in an accident and was killed; the Court held such user was with the permission of the named insured, under the omnibus clause, Weiss was an additional insured, and the insurer was subject to suit on the policy by the administrator of his estate and a judgment creditor who had theretofore obtained a judgment against Weiss' estate. The Court, with approval, referred extensively to Dickinson v. Maryland Casualty Co., 101 Conn. 369, Stovall v. New York Indemnity Co., 157 Tenn. 301, Drewek v. Milwaukee Auto Insurance Co., 207 Wis. 445, and Odden v. Union Indemnity Co., 156 Wash. 10, cited Jackson v. Bankers Co., supra, other cases from Virginia, Kentucky, and Minnesota, and quoted, with approval, the same language from Stovall v. New York Indemnity Co., supra, which had been done in Jackson v. Bankers Co., supra.

In Jefson for Use of Alber v. London Guarantee and Accident Co., Ltd., supra, in which the Supreme Court denied leave to appeal, the named insured, about 6 p.m., gave permission to Jefson, the user, her chauffeur and houseman, to take her car to get a haircut, if

517

he could get back in a half hour; Jefson did not go to get a haircut, but instead drove various other places, he was gone several hours, and later that evening he was involved in an accident, many miles away; the Court held such user was with the permission of the named insured, Jefson was an additional insured, and the insurer was subject to garnishment on account of a judgment theretofore recovered against Jefson; the Court referred to, among others, Jackson for use of Schaer v. Bankers Indemnity Ins. Co., supra, and Karton v. New Amsterdam Casualty Co., supra, and said, pp. 101, 102:

"The facts have been presented by stipulation so apparently no controversy exists as to them. As we view this case the only question to be determined is one of law, namely, 'What is the legal meaning of the additional assured clause as contained in the automobile insurance policy?' "

"The first question confronting us is: Was Jefson made another assured by the permission given by Mrs. Jackson for him to use the automobile? We think from the facts stipulated there can be no doubt that immediately upon the permission being given, Jefson was an additional assured in accordance with section 9 of the insurance policy."

The Court then said, pp. 103, 106, 107:

"That brings us to another question: Could a limitation be placed upon that permission by the statement of Mrs. Jackson, that if he could get his haircut in a half hour he could take the automobile, when there is no such limitation as to permission expressed in the language used in the policy?"

"It appears to us that if the assured in an automobile policy were able to limit the meaning of the word 'permission,' both as to the length of time the permis-

518

sion be granted, as well as to where such automobile should be driven, and any nonobservance of such restrictions would relieve the insurance company of any liability, this would result in some absurd situations. If, for example in the instant case, at the expiration of one-half hour, Jefson was unable to have his haircut and reach home within that period of time, then somewhere enroute the permission would expire and he would become a trespasser and would be guilty of a misdemeanor under the laws of the State as driving without the consent of the owner. We are inclined to believe that such restriction and limitation could not be placed on the permission given under the terms of the policy. Permission to use an automobile is either granted or it is not granted and we do not believe the assured can limit the scope of such permission either as to time or place. We do not think the language of the policy admits of any such construction."

In Landis for use of Talley v. New Amsterdam Casualty Co., supra, in which the Supreme Court denied leave to appeal, the named insured, under an automobile garage liability policy, gave permission to Landis, the user, his employee, to take the truck, go to the named insured's farm, milk the cows, do some other chores, and deliver the milk to Landis' home; Landis did so, but before returning the truck to the named insured's garage and while it was still in Landis' possession Landis went to some taverns on a personal trip and in the course thereof was involved in an accident; there was no omnibus clause in the policy, but it provided that it must comply with the Financial Responsibility Law of any state (similarly as does one part of the policy in the present case), and the Court said the statutory omnibus clause of ch. 95½, Ill. Rev. Stats., 1951, par. 58k, (set out above) should be read into the policy; the Court then held that Landis' user was with permission of the named insured,

519

he was an additional insured, and the insurer was subject to garnishment on a judgment theretofore recovered against Landis; the Court said, p. 567:

". . . Since Landis as the driver had the initial permission of the owner, Peters, to use the truck on the day in question, all subsequent use of the truck by the driver is construed to be with the permission of the insured, within the meaning of the Statute and the policy. Landis was an additional assured under the policy issued by defendant Insurance Company. He was an additional assured within the limits of the policy and was entitled to coverage as such assured (Culver v. Webb, supra)."

We have also been referred to these Illinois cases: Zitnik v. Burik (1946), 395 Ill. 182; Soukup v. Halmel (1934), 357 Ill. 576; Cocos v. American Automobile Ins. Co. (1939), 302 Ill. App. 442, pet. for leave to appeal denied, 302 Ill. App. xiv; Goff v. New Amsterdam Casualty Co. (1943), 318 Ill. App. 586; People v. Luster (1937), 292 Ill. App. 244; Byrne for use of King v. Continental Casualty Co. (1939), 301 Ill. App. 447, pet. for leave to appeal denied, 302 Ill. App. xiv; and to this Federal case: Continental Casualty Co. v. Padgett et al. (1955), 219 F.2d 133 (C.A.4th). We have considered them all, but do not believe any of them applicable here. It would unduly extend the length of this opinion to discuss them all, and we shall refer only to Byrne for use of King v. Continental Casualty Co., supra.

In Byrne for use of King v. Continental Casualty Co., supra, the named insured told the user, her chauffeur, after returning her to her home during the day, to put the car in a public garage, where it was kept, until the next morning, and then to bring it back for her at 11 a.m. that next morning; the user did so return it to that garage, and departed, but later that evening he came back to the garage, took it out again,

drove around on some personal missions, and about 8 a.m. the following morning was involved in an accident; it was held, in substance, with one Judge dissenting, that, under the circumstances, the user did not have initial permission in the first instance from the named insured; as was said in Goff v. New Amsterdam Casualty Co., supra, p. 603, "In the Byrne case we held that the chauffeur took the car without permission"; the Court in the Byrne case did not at all depart from, but apparently recognized, the principles of Jackson for use of Schaer v. Bankers Indemnity Casualty Co., supra, Karton v. New Amsterdam Casualty Co., supra, and Jefson for use of Alber v. London Guarantee and Accident Co., supra, but thought the Byrne case on its facts was distinguishable from them;—in fact, the Court in the Byrne case referred to part of the same quotation from the Jefson case which we've previously set out, and referred to the same quotation from Stovall v. New York Indemnity Co., 157 Tenn. 301, as did some of those other cases and as is previously set out; we do not perceive that, under the circumstances, the Byrne case is applicable here.

"Permission" of a user by the named insured, as the language appears in the ominbus, or extended coverage, or additional insured clause of the policy here, or in the statutory omnibus clause adopted by the insurer, is not otherwise defined, or delineated in the policy. It is, here, a simple, general, unrestricted, and rather inclusive term, and there is nothing therein to indicate that it might be restricted or to indicate the circumstances under which a permission, if once given, may be, for this purpose, considered terminated. That the policy does not indicate anything as to the purpose of use of this particular truck, does not restrict its use to any particular purpose, but leaves that matter entirely open, is of some significance as to the intentions of the named insured and the insurer and has some bearing in interpreting and construing their

acts in a particular case upon the question of whether the named insured gave permission to the user. The general, rather sweeping provisions of the endorsement that the liability of the insurer extends to injuries whether occurring on the route, or in the territory served by the insured, or elsewhere in Illinois, and that nothing in the policy or any violation thereof or of the endorsement by the insured shall relieve the insurer from liability, are also somewhat material as to the intentions of the named insured and the insurer and as to whether in a particular case the named insured gave permission to the user, and are somewhat indicative that there can conceivably be situations where there may be some violation of some provisions of the policy or endorsement by the insured (meaning the named insured or a user having permission of the named insured) but which will nevertheless not relieve the insurer.

The user here, Robert Lyle Jones, was a regular employee as a driver-salesman of the named insured, Q Candy and Cigar Co., a corporation. The named insured owned the truck, paid all the operating expenses, it was assigned to Jones, the company gave him the keys, and he had to sign for it. He was not required, or evidently expected, to return the truck to the company garage or warehouse at the end of the day, or to deliver up the keys to the company. His hours of work were somewhat flexible, beginning about 7 a.m. and ending about 5 p.m., depending on what stops he made. If he took the truck to his home at the end of the day, as he could properly and lawfully do, he was responsible for it when he checked in with the company the next morning, and he had to make a report to the company checker at its warehouse the next morning. True, he was told the truck could not be used for any purpose except business. But, that is only one of many factors, including the language of the policy, which must be considered, and that circumstance

must be weighed in the light of all the other facts and circumstances. The admonition as to its use is an attempted oral restriction on the general, unrestricted term "permission" as used in the policy, and is an effort to define the purpose of use of the truck, despite the fact its purpose of use is not so defined or restricted by the policy. Such admonition under all the circumstances here present cannot be considered a definite, clear, effective, enforceable express prohibition by the employer. An employer cannot, so far as the particular matter here is concerned, effectively prohibit such personal use when he at the same time by his every act places it entirely in the control of the employee so to engage in such personal use. Prohibition under these circumstances is but an empty word and does not jibe with the employer's actual acts in vesting the user with every indicia of permission. The fox cannot be set to watch the hen house. Such is not realistic. "Permission" to use this truck was either granted or not granted to the user Jones. It could not practicably be granted in one breath or with one hand, as it unquestionably was, and yet not granted in the next breath or with the other hand, as the defendant urges.

Having been so granted, in what manner, when, and how was that permission ever terminated? The burden to show, affirmatively, a definite, clear, effective, enforceable termination of permission would seem to be on the defendant. But if, as here, the truck is regularly and continuously assigned to the user, Jones, he is continuously in possession, he is given the keys, is not required or expected to and does not, in fact, turn them in to the company or anyone else at the end of the day, he is not required or expected to and does not, in fact, return the truck to the company or anyone else at the end of the day, and he is continuously responsible for it at all times he has possession, we can perceive no definite, clear, effective,

enforceable termination or cut-off of permission. Jones' bringing the truck back to his own home about 5 p.m., his confusing trip downtown after supper, and his again coming back in it to his own home about 9:30 p.m., cannot be said to be an effective termination or cut-off of permission. There may well be circumstances under which, upon a return by the user or putting of the vehicle away and a surrender of possession, particularly to the employer or someone else, after the accomplishment of the certain particular purpose for which the user employee originally had it and the end of the original bailment, the user's responsibility, possession, and permission could be considered as effectively terminated, and, if so, then a later distinct retaking or reacquiring of possesssion again by the user, particularly from the employer or someone else, and an additional, distinct, separate use thereafter, without a renewed permission of the named insured, may well be said to be without permission. Byrne for Use of King v. Continental Cas. Co., supra, was probably such a case. But such is not the case at bar.

Under these circumstances, we believe the named insured, Q Candy and Cigar Co., a corporation, had initially once given permission to Jones, the user, to use this truck, but the user deviated (if he did) from the permission granted, and the permission was never definitely, clearly, and effectively terminated. Under the initial permission rule, the user needing only to have permission to take the truck in the first instance, any use while it remained in his possession was with "permission," under the omnibus clause, though that use may have been for a purpose not contemplated by the named insured when it parted with possession. Hence, Jones was a person using or responsible for the use of the motor vehicle with the express or implied permission of the named insured and was an

524

insured or additional insured under the omnibus clause.

The second basic question is: what is the extent of the liability of the defendant insurer? That, of course, depends on the policy limits of liability. The policy provides that—"The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto," following which, for bodily injury liability the limits of liability are stated as "$25,000.00 each person." Shortly below that in the policy is the legend "Form numbers of endorsements attached to policy— (B) Ill. Truck Filing A–1093 A–1235." We cannot find those endorsements in the transcript of record, but we assume such is an inadvertent oversight of the parties, inasmuch as the stipulation was to the effect, in part, that the policy (presumably including all endorsements) be introduced in evidence and that it covered the truck here involved, and inasmuch as the defendant's additional abstract recites that there was attached to the policy an "endorsement for motor carriers policies for bodily injury liability and property damage liability under Section 16 of the Illinois Truck Act," which endorsement is set out in the additional abstract, and which, though bearing no numbers, we assume was the endorsement "Ill. Truck Filing A–1093 A–1235" referred to in the policy, inasmuch as the plaintiff has not questioned the sufficiency of the record or the accuracy of the additional abstract.

That endorsement states that it is attached to and forms part of the policy. It amends the policy. It provides—"the company hereby agrees to pay any final judgment recovered against the insured for bodily injury to—any person—resulting from the operation, maintenance or use of the motor vehicles described under the policy and subject to the Illinois Truck Act by reason of the design or use of such vehicles, *sub-*

*ject, however, to the limits of liability set forth herein.* Any person—who has secured such judgment—shall thereafter be entitled to recover under this policy *to the extent of the insurance afforded by this policy.— The liability of the company under this endorsement* on each described motor vehicle shall be a continuing one,—*and on all such described motor vehicles shall be limited to the following amounts: $5,000.00 limit for bodily injuries to—one person;—.*" (Emphasis added.)

The named insured, Q Candy and Cigar Co., a corporation, was evidently a "private carrier" under the Illinois Truck Act, ch. 95½, Ill. Rev. Stats., 1951, par. 240 ff, and subject to its requirements as to liability insurance policies affecting trucks: par. 253. The foregoing applicable $5,000 policy liability limit in the endorsement complied with the minimum policy limit required by that act as to trucks.

 The rights and liabilities of the parties are governed by the contract made by them, whether evidenced by one or several written instruments: 22 I. L. P., p. 134; contracts of insurance are to be governed by the principles applicable to construction of contracts generally: 22 I. L. P., p. 177; the primary purpose of the construction of such a contract is to ascertain the intention of the parties: 22 I. L. P., p. 182; the contract should be construed as a whole, giving effect to every portion so far as possible: 22 I. L. P., p. 186, including all accompanying papers, riders, and endorsements constituting part of the contract: 22 I. L. P., p. 190; where the provisions of the policy proper and the provisions of an attached rider or endorsement are in conflict, the rider or endorsement will control: 22 I. L. P., p. 191.

The endorsement, in the light of those principles, is a part of the contract of insurance. Considering the contract as a whole, and giving effect to every por-

tion so far as possible, the applicable $5,000 policy limit of liability stated in the endorsement, so far as this truck is concerned, is clear. We do not understand it to be in conflict with or inconsistent with the applicable $25,000 policy liability limit otherwise stated in the policy in the first instance. The policy may well have covered and evidently did cover certain other vehicles which were not subject to the Illinois Truck Act and to which that endorsement would have no application and which would, therefore, be governed by the prior policy liability limit stated in the first instance. But as to those vehicles which were subject to that Act, including this truck, the endorsement was applicable. The intentions of the parties are reasonably clear. If, however, there be thought to be any conflict in this respect between the policy limits first stated and those stated in the endorsement, the rider or endorsement must control.

Accordingly, the defendant insurer's liability here is limited by the contract to $5,000, and costs.

The matters involved here are, we believe, almost entirely questions of law, and the judgment below is, we think, contrary to the law, but to whatever extent they may be considered questions of fact we consider the judgment contrary to the manifest weight of the evidence.

The judgment is, therefore, reversed, and judgment is entered here in favor of the plaintiff-appellant William G. Konrad, Public Administrator of the Estate of Robert Lyle Jones, deceased, for the use of Bernard Kelley, a minor, by Kathleen Benson, his Mother and Next Friend, and against the defendant-appellee Hartford Accident & Indemnity Company, a corporation, in the sum of $5,000, and costs.

Reversed, and judgment entered here.

DOVE, P. J. and EOVALDI, J., concur.