**Horace A. ARNOLD, as Administrator of the Estate of Robert Eugene Arnold**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

No. IP 56-C-63.

United States District Court
S. D. Indiana,
Indianapolis Division.

Jan. 15, 1958.

———◆———

Townsend & Townsend, Earl C. Townsend, Jr. and John F. Townsend, Indianapolis, Ind., for plaintiff.

Kivett & Kivett, Joseph L. Kivett, Indianapolis, Ind., for defendant.

STECKLER, Chief Judge.

This cause came on for trial before the court on December 9, 1957. At the conclusion of all the evidence on December 10, 1957, the court directed the jury to return a verdict for the plaintiff. Since the decision which prompted the court to direct a verdict for the plaintiff has aroused considerable interest on the part of the Indiana bar in general, due to the absence of clear, succinct decisions of Indiana courts on the precise legal issues involved, the court has deemed it advisable to set out at some length the reasoning which underlay said decision.

A brief summary of the facts of the case, as presented by the record, is as follows: James V. Ray was the operator of two farms, which will be referred to in this summary as Farm No. 1 and Farm No. 2. Farm No. 2 was located about two and one-half miles away from Farm No. 1, the latter being the situs of the Ray home. Ray was the owner of a certain 1950 G.M.C. truck, which was used in connection with his farming activities. Lowell Leroy Gibbons was employed by Ray as a general farm laborer. On the morning of July 27, 1952, Ray's wife, act-

ing on the instructions of her husband, who was ill, gave Gibbons the keys to the truck in order for him to drive it to Farm No. 2 and feed and water certain livestock. A few days prior to the morning here involved, Gibbons had conferred with Ray about looking after the farm chores on both farms during Ray's confinement, and it was generally understood that Gibbons would use the truck in that connection. Pursuant to his general instructions and after obtaining the keys from Mrs. Ray, Gibbons drove the truck over to Farm No. 2. There he watered the livestock, though he did not feed them, and then he decided to drive the truck to the Town of Bridgeport, Indiana, which was located approximately fifteen miles away. While in Bridgeport, Gibbons contacted a bootlegger from whom he purchased some whiskey. After consuming a portion of his newly acquired whiskey, Gibbons commenced the journey back to the Ray homestead, taking one or two drinks while on the way back to the farm. While passing through the Town of Plainfield, Indiana, on his way back to the Ray home, Gibbons was involved in a collision with a bicycle ridden by plaintiff's fourteen year old son. Plaintiff's son was killed. Plaintiff then brought an action for wrongful death against Gibbons in the Hendricks Circuit Court, Hendricks County, Indiana, and recovered therefrom a default judgment for $15,000.

The evidence also showed that Ray had been ill for about a week prior to the day of the accident; that during this time Gibbons had been permitted to use the truck in question daily in the performance of his duties. The evidence also showed that on one other occasion, Gibbons had been permitted to take the truck to a certain grain elevator located several miles away from the Ray homestead.

With respect to the truck, Ray was insured by the defendant by a policy of in-surance containing a so-called "omnibus clause," which provided, in Section III of the policy as follows:

> "With respect to the insurance for bodily injury liability, for property damage liability, and for medical payments the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or *with his permission.*" (Emphasis added.)

Plaintiff brought this action on his judgment to collect under the insurance policy quoted from, his theory being that at the time of the accident out of which the judgment resulted, Gibbons was operating the truck with the permission of Ray, the named insured referred to in the quotation from the policy, and was therefore an additional insured himself under the same policy by virtue of the extended coverage afforded by said omnibus clause.

There was no dispute during the trial over the question of whether Gibbons had the permission of Ray to use the truck at the time Gibbons first embarked on his fatal journey. In fact, counsel for defendant tacitly conceded that Gibbons had the initial permission of Ray at the time he left the Ray farm. The theory of the defendant's defense was, in essence, based upon two propositions of law. First, the defendant contended that the instant case was governed by a line of Indiana cases construing a statute [1] which requires that omnibus clauses be inserted in all automobile insurance policies issued in Indiana. The cases so relied upon by defendant are Spicklemeier v. T. H. Mastin & Co.,[2] Shadow v. Standard Accident Insurance Co.,[3] Culley v. Farm Bureau Mutual Insurance Co.[4] and American Employers' Ins. Co. v. Cornell.[5] These cases take the

1. Ind.Ann.Stat. § 39–4309 (Burns' 1952).
2. 1940, 107 Ind.App. 350, 24 N.E.2d 797.
3. 1942, 111 Ind.App. 19, 39 N.E.2d 493.
4. 1946, 224 Ind. 483, 69 N.E.2d 19.
5. 1942, 225 Ind. 559, 76 N.E.2d 562.

position that the omnibus clause provision of the statute was only designed to protect the owner of a vehicle and that said statutory provision could not be read into a policy so as to extend the coverage of the policy to a permittee. The Spicklemeier, Shadow and Culley cases all arose on facts wherein there were no express omnibus clauses in the policies of insurance sued upon. In those three cases, the plaintiffs were contending that despite the lack of express omnibus clauses in the policies in question, the effect of the statute was to "write in" such clauses, and that therefore the permittees were covered by the policies just as effectively as they would be were express omnibus clauses present in the policies. That the Indiana courts have limited the "public policy" doctrine set forth in the Spicklemeier, Shadow and Culley decisions to cases arising on fact situations wherein there is no express omnibus clause in the policy is indicated by the case of Mercer Casualty Co. of Celina, Ohio v. Kreamer,[6] and the case of American Employers' Insurance Co. v. Cornell.[7] In the Kreamer and Cornell cases, omnibus clauses were found in each of the insurance policies through which coverage for the permittee was sought. In both cases, the Indiana courts held that the permittees were covered by the policies by virtue of the omnibus clauses found therein. Thus the current status of Indiana law on this point may be found summed up in the opinion of Judge Young in American Employers' Insurance Co. v. Cornell.[8] Stated briefly, the court reaffirmed the holdings of the Spicklemeier, Shadow and Culley cases, as regards the statute. But then it went on to say that the statute was not applicable in the case before it since there was an express omnibus clause in the insurance policy sued upon therein. The court then proceeded to hold that the coverage of the policy was extended to cover the permittee there in question. The inevitable inference which arises as a result of this decision is that the concept of restricted coverage laid down by the Spicklemeier, Shadow and Culley cases and reaffirmed in the Cornell case is limited in its application to cases wherein no omnibus clause is found in the policy itself and wherein the plaintiff contends that such a clause has, in effect, been written in by the legislature due to the statute noted.[9] Since the insurance policy sued upon in the action before this court contained an express omnibus clause, the court rejected the contention of defendant State Farm Mutual Automobile Insurance Co. urging application of the doctrine set forth by the Spicklemeier line of cases and applied instead the principles enunciated in the Kreamer and Cornell cases, which, on the facts, were more closely in point.

▪ Having thus determined that under Indiana law a permittee was not excluded from coverage under an insurance policy containing an express omnibus clause, the court was then confronted with the second proposition put forth

6. 1937, 105 Ind.App. 358, 11 N.E.2d 84.

7. Supra, Note 5.

8. 1942, 225 Ind. 559, 76 N.E.2d 562. The case has a rather illuminating history in the Indiana appellate court system. It first appeared at Ind.App., 73 N.E.2d 70 (May 26, 1947). There, the Indiana Appellate Court, following Mercer Casualty Co. of Celina, Ohio v. Kreamer, supra, Note 6, held that the permittee was covered by the policy by reason of the omnibus clause found therein. On the petition for rehearing, apparently a contention similar to the one raised by defendant in the instant case was encountered, i. e., that the Spicklemeier line of decisions, supra, Notes 2, 3, 4, established a firm policy applicable to all omnibus clauses, whether expressly incorporated in the policy or not. In denying the petition for rehearing the court, speaking through Judge Bowen at Ind.App., 74 N.E.2d 748 (Sept. 30, 1947), met the petitioner's contention by overruling the Spicklemeier, Shadow and Culley holdings that the statute inured to the benefit of the owner only and not a permittee. Thus, for a brief instant, what would seem the better view of the law prevailed, as regards the statute (§ 39–4309, supra, Note 1). The case then went to the Supreme Court of Indiana.

9. Supra, Note 1.

by defendant in its defense. This proposition asserted that even if permittees were within the coverage of a policy by virtue of the extended coverage afforded by an omnibus clause, Gibbons could not qualify as such a permittee for the reason that, in deviating from the use of the truck contemplated by Ray at the time permission was given, the initial permission was, in effect, terminated, thus removing Gibbons from the permittee status at the time of the accident. Apparently the courts of this nation have referred to a permission as having "terminated" where either of two possible situations are present. One such situation is where a permittee takes a vehicle with permission, uses it, returns it, and then without securing permission again, retakes the vehicle. In that situation the permission is said to have terminated when the vehicle was returned.[10] The other situation arises where the permittee is given permission to use the vehicle for a limited period of time and the actual period of use grossly exceeds the period contemplated when initial permission was granted.[11] Neither of these situations is shown by the evidence to have existed in the instant case nor have counsel so contended. Hence, it may be inferred that in using the word "terminated," defendant was actually contending that the deviation from the use reasonably contemplated by Ray in granting permission initially was such that said initial permission was, in effect, voided by implication, the result being that Gibbons was not a permittee at the time and place of the accident and therefore was not covered by the policy. With initial permission conceded, the court's task was to ascertain what rule the Indiana courts follow with regard to deviations from the purpose and use for which the initial permission was granted.

At the outset, it seems advisable to first dispose of a matter which has contributed considerable confusion to a resolution of the precise question here confronting the court. In the instant case, Gibbons, the driver, was an employee of Ray, the owner of the truck. This fact, taken in the context of the accident out of which this controversy arose, gave rise to a tendency to apply the familiar agency-scope of employment rules in determining the liability of the defendant. Upon close scrutiny, however, it appeared that the rules of agency had no bearing in this case. This deduction was the result of two observations. First, it was clear that the plaintiff was not relying upon an agency theory. Had plaintiff elected to rely upon agency, he doubtless would not have dismissed his case as against Ray in the Hendricks Circuit Court.[12] By dismissing his case as against Ray, plaintiff apparently decided to forsake reliance upon agency and to proceed solely in contract, the theory upon which his action in this court was based. With this observation clearly in mind, further analysis convinced the court even more strongly that the apparent similarity between the instant permission—deviation from permission situation and the more familiar agency —scope of employment situation was most deceiving. This deception is revealed when one recalls that in the latter situation, liability, if any, is generally based upon an employment relationship. Thus the question there presented is whether the employee's behavior was of such a nature as would relieve the employer from certain responsibilities imposed upon him by law by reason of the employment relation existing between him and the employee. The obligation thus undertaken by the employer by operation of the rule of *respondeat superior* is imposed by the law in a rather arbitrary fashion; the employer does not voluntarily assume such an obligation in exchange for a consideration received. In the former situation, however, the permission-deviation from permission situa-

---

10. 5 A.L.R.2d 660 and cases cited therein.

11. 5 A.L.R.2d 663 and cases cited therein.

12. Initially, Ray had been joined with Gibbons as a co-defendant in the state court action. The complaint was dismissed as to Ray and a default judgment entered against Gibbons.

tion, the liability, if any, of the insurance company is not based upon any employment relation existing between it and the permittee, but.can only be predicated upon an express contract between the insurance company and the other party to the contract, the named insured. Thus a court, in this situation, must confine its deliberations to the language of the contract through which liability is sought to be imposed. If the conditions expressed in the contract as being requisite to liability thereon are met, then liability will attach. In this regard, it is to be noted that in the contract or policy under scrutiny in this case, nothing is stated to the effect that if the permittee happens to be an employee of the named insured, he must not only have permission but must be acting within the scope of his employment as well before he is embraced by the extended coverage afforded by the omnibus clause. Moreover, nothing in the policy indicates that any liability arising thereon is in any way predicated upon the existence of an employment relationship between the named insured and the permittee. Absent such conditions in the language of the policy or contract, the law of agency became irrelevant.[13] The court was restricted in its deliberations to construing the legal effect of the language of the contract as presented in this case. With this matter thus disposed of, the court proceeded to examine the precedents in an effort to discern the Indiana law on the permission-deviation from permission issue.

In an excellent annotation found at 5 A.L.R.2d 621, the editor notes that the courts of this country are divided in their approach to this question; that generally speaking, the decisions establish that the courts have followed one of three views in resolving this question. The first view is classified as the "strict or conversion rule." This rule holds that "for the use of the car to be with the permission of the assured within the meaning of the omnibus clause, the permission, express or implied, must have been given to the employee not only to the use of it in the first instance, but also to the particular use being made of the car at the time in question." [14] The second view is the moderate or "minor deviation" rule which holds that a slight deviation from the permitted use will not exclude coverage whereas a material deviation constitutes a use of the automobile without the employer's implied permission. The editor then notes that, for obvious reasons, this view is difficult of application. The third view, which ap-

---

13. The same conclusion was reached by the United States District Court for the Western District of Kentucky in the case of Vezolles v. Home Indemnity Co., New York, D.C.W.D.Ky.1941, 38 F.Supp. 455, affirmed per curiam, 6 Cir., 1942, 128 F. 2d 257, in an opinion quoted with approval in Yorkshire Indemnity Co. of New York v. Collier, 6 Cir., 1949, 172 F. 2d 116. The case arose on a fact situation quite similar to the one encountered in the instant case. As to the applicability of the law of principal and agent in determining coverage under an omnibus clause, the court said:

"The provision in the policy is not to be governed by the law of principal and agent. Liability on the part of the Insurance Company under that theory of the law was already provided by the policy as it was written before the omnibus clause was added. The purpose of the omnibus clause was to extend the coverage beyond the limitations which would otherwise exist under the law of

principal and agent. Its addition to the usual terms of liability insurance policies was for the purpose of increasing the advantages of the policy being purchased, to provide additional coverage, and to be used as a selling point in competition with other standard policies. To give it a construction which is closely parallel to the existing law of principal and agent would ignore the evident purpose of its being made a part of the policy. In my opinion the purpose of the omnibus clause was to extend the liability insurance coverage to a person other than the owner who had the possession and use of the car with the permission of the owner for a somewhat limited period of time, without arbitrary and definite restrictions as to just what could be or what could not be done with the car during that period of time." 38 F.Supp. at pages 458, 459.

14. 5 A.L.R.2d at page 622.

parently represents the weight of authority, is the so-called "liberal rule." Under this rule, the employee-permittee "need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is 'with permission' though that use may be for a purpose not contemplated by the assured when he parted with possession of the vehicle." [15] The editor then notes that Illinois, Wisconsin and five other states apparently follow the "liberal rule," with Indiana listed as one of the states which "probably" would follow the liberal rule if confronted with the issue in a case involving permission to an employee. Mercer Casualty Co. of Celina, Ohio v. Kreamer [16] is cited by the editor as supporting this view. As the editor intimates, neither the Kreamer case nor for that matter, the Cornell case, supra, involved a permittee who was also an employee of the named insured and who, it was contended, was excluded from coverage by reason of a deviation from the permitted use. Thus there is no Indiana case squarely in point. In the Kreamer case however, the court supports its holding that the permittee was covered by citing several cases from other jurisdictions wherein the "liberal rule" was followed in fact situations involving an employee-permittee who had allegedly deviated from the permitted use.[17] Aside from these citations, the dissimilarity between the facts which existed in that case and those present in the instant case renders the Kreamer case of uncertain value as a precedent in the fact situation confronted here, except for the inference which arises to the effect that the Indiana courts would hold the same way in

an employee-permittee case and where the deviation of the permittee was in issue as they did where the permittee was a member of the household of the owner's fiancé and the deviation issue was apparently not raised.[18]

American Employers' Insurance Co. v. Cornell,[19] like the Kreamer case, did not present an employee-permittee situation of the type confronted here. However, the case is noteworthy because of the way in which the court reached its ultimate conclusion. In the Cornell case, as in the Kreamer case, the owner of the automobile had clothed another with "blanket authority" to allow others to use the car. In the Kreamer case, the court reasoned that due to this blanket authority, permission granted by the owner's fiancé constituted permission of the owner. The court then proceeded to find coverage under the policy, apparently on the grounds that the initial permission thus shown was all that was required. In the Cornell case, however, the court did not find permission by applying the "blanket authority" doctrine. Instead, it found that the owner and named insured had impliedly permitted the use of the car by failing to object to her husband's decision to let the permittee take the car, said decision having been made in her presence. Again, the Indiana court was apparently satisfied that initial permission was all that was required for coverage of the permittee under the omnibus clause there in question.

Having thus satisfied itself that the Indiana authorities, in cases where the permittee is not an employee and in which the deviation issue was not raised, have definitely displayed a strong leaning

---

15. Ibid.

16. Supra, Note 6.

17. See Dickinson v. Maryland Cas. Co., 1924, 101 Conn. 369, 125 A. 866, 41 A.L.R. 500; Stovall v. New York Indemnity Co., 1928, 157 Tenn. 301, 8 S.W. 2d 473, 72 A.L.R. 1368; Boudreau v. Maryland Cas. Co., 1934, 287 Mass. 423, 192 N.E. 38.

18. In the Kreamer case, the owner of the car had conferred a blanket authority

upon her fiancé not only to use the car himself but to allow others to use the car. The fiancé gave his cousin, a member of his household, permission to take the car down to get it washed. An accident occurred while the cousin was driving around with a lady friend. Held, the cousin was covered under the policy by virtue of the omnibus clause found therein. 1937, 105 Ind.App. 358, 11 N.E. 2d 84.

19. Supra, Note 5.

toward what amounts to the liberal view noted above, the court next turned its attention to the cases from other jurisdictions that were cited by defendant in support of its contention. The most notable of these cases is Branch v. U. S. Fidelity & Guaranty Co.,[20] wherein the 6th Circuit Court of Appeals reviewed the law of Tennessee. The court noted that the Tennessee court, in Moore v. Liberty Mutual Ins. Co.,[21] had considerably qualified the liberal rule adopted in Stovall v. New York Indemnity Co.[22] Stated briefly, the court, following the Moore case, held that the liberal initial permission view applied only where the employee had "general custody" of the vehicle; that where the employee-permittee had only a "limited permission," i. e., permission to use the vehicle for a definite purpose, the liberal view did not apply. Since neither the Cornell case nor the Kreamer case, the two Indiana cases noted, were cases in which it could be said that the permittee had "general custody" of the vehicle, as opposed to a limited permission, the court felt that to view the current Tennessee position as the law of Indiana, would be most presumptuous, especially if done by a federal district court. The court also noted two cases from the neighboring State of Illinois wherein the liberal view was followed.[23]

Having thus familiarized itself with the three conflicting rules which have developed as a result of much litigation on this very question,[24] the court concluded that what amounts to the liberal view, which represents the weight of authority, was the law in Indiana in situations where the permittee was not an employee and the deviation issue was not specifically raised. With this conclusion in mind, the court did not feel that it could assume, in the absence of clear authority, that Indiana law would be different where an employee-permittee situation was encountered and the deviation issue was squarely presented. In addition the court gave due consideration to the apparent superiority of the liberal view insofar as feasibility of application is concerned. In this regard one might observe, that with the growing volume of personal injury actions, a very real public interest exists in behalf of expeditious disposition of this type of case. Consequently, a rule which tends to minimize time consuming litigation, while doing substantial justice to the parties at the same time, would seem most preferable.

With the liberal, initial permission rule thus embraced as the law of Indiana, the absence of any dispute of fact over the initial permission given to Gibbons became determinative. With no issue of fact on this question presented, it became apparent that there was no issue for the jury's determination and that, accordingly, a verdict should be and was directed for the plaintiff.

20. 6 Cir., 1952, 198 F.2d 1007.

21. 1952, 193 Tenn. 519, 246 S.W.2d 960.

22. Supra, Note 17.

23. Jefson, for Use of Alber v. London Guarantee & Accident Co., 1937, 293 Ill. App. 97, 11 N.E.2d 993; Konrad v. Hartford Accident & Indemnity Co., 1956, 11 Ill.App.2d 503, 137 N.E.2d 855.

24. The court might add that it believes that the conflict on this question has largely come about simply by reason of the strained and laborious efforts on the part of the courts to contort the plain and ordinary language of the omnibus clause in insurance policies.