UNITED STATES FIDELITY & GUAR-
ANTY COMPANY, a Corporation,
Plaintiff,

v.

The MILLERS MUTUAL FIRE INSUR-
ANCE COMPANY OF TEXAS, a
Corporation, Defendant.

No. 66 C 369(2).

United States District Court
E. D. Missouri, E. D.

July 14, 1967.

George E. Lee, St. Louis, Mo., for plaintiff.

A. G. Holtkamp and James J. Amelung, Holtkamp & Amelung, St. Louis Mo., for defendant.

## MEMORANDUM

MEREDITH, District Judge.

This case was tried to the Court without a jury. After hearing oral testimony and examining briefs of the parties, the Court will render a judgment in favor of defendant and against plaintiff.

The case grows out of an accident which occurred when plaintiff's insured, William Siedhoff, was driving a car owned by defendant's insured, Dr. Emmett J. Gillespie. Both Siedhoff and his companion, Margaret Stemme, were injured as a result of the accident, and the car, a 1964 M.G.B., was damaged beyond repair. Plaintiff, a Maryland corporation, has sued defendant, a Texas corporation, asking for a declaratory judgment, stating that Siedhoff was covered by defendant's policy and, therefore, defendant should reimburse plaintiff for the legal expenses incurred by plaintiff in defending Siedhoff against Stemme in the suit she instituted asking for $65,000 damages, and any and all damages paid as a result thereof up to the limit of defendant's policy, which is $25,000. This Court has jurisdiction under 28 U.S.C. § 1332.

The briefs of both parties indicate that the crucial question is whether or not Dr. Gillespie, the named-insured of defendant's policy, gave Siedhoff permission to drive the car. If he did, either directly or indirectly, Siedhoff is covered by the "omnibus clause" which provides that persons driving with the permission of

the named-insured are covered by the policy.

Dr. Gillespie, a resident of Cairo, Illinois, bought the car as a graduation gift for his son Duff, but retained title, bought Illinois license plates for the car, and had himself, not Duff, named as insured on the insurance policy, which was issued by defendant. The car was given to Duff, who had complete control of it thereafter, with the sole restriction that the car was for Duff's personal use and could not be loaned out to others except in emergency situations. Dr. Gillespie stated that Duff understood the reason for this restriction, and that he firmly believed that Duff did not permit anyone else to drive the car. Dr. Gillespie also stated that Duff could give someone permission to use the car "if there was an emergency or accident * * * but not for dating or pleasure", and that Duff said he would give permission to no one to use the car, except in emergency.

Duff graduated from Washington University in St. Louis, Missouri, in 1962. He stayed on for graduate work there, during which time he shared an apartment with three other boys, one of whom was William Siedhoff. During the summer of 1965, Duff left for Europe. At the time of his departure, the boys were considering moving out of the apartment where they had been living and where Duff had garaged his car, so Duff left the keys to his car with Siedhoff, with instructions to him to move the car if the boys moved from the apartment, and "not to * * * use it unless it was something of a dire emergency." This statement was made by Siedhoff to Fred Stanley at the hospital two to three weeks after the accident. Siedhoff's memory was considerably weaker by the time his deposition was taken, and he refused to either deny or affirm the statements made at the hospital. His testimony at trial was such that the Court is unable to accept it as reliable. But, the statement he made at the hospital was very definite on this point, and is corroborated by Dr. Gillespie's understanding of the arrangement as Duff explained it to him. It was Dr. Gillespie's understanding that Duff had given Siedhoff the keys to the car with instructions to move it should the boys move from the apartment where the car was garaged. As Duff had authority to name others as insured only in the event of an emergency, Siedhoff's use of the car was proper only if there was an emergency.

Siedhoff had borrowed the car to provide transportation for himself and Margaret Stemme to and from a swimming party, because Siedhoff's usual means of transportation, his motorcycle, had broken down. The party was attended by four or five other couples, including another room-mate, Jennings Simpson, and while having Duff's car was probably a convenience for Siedhoff, it could not be considered as the kind of "dire emergency" for which Duff had given permission, and a fortiori would not have met the "accident or emergency" standard for situations in which Dr. Gillespie had given Duff authority to loan the car to others.

■ Plaintiff has the burden of proof. Duff Gillespie was in Europe and was not deposed and did not testify. The plaintiff has failed to meet its burden of proof.

■■ It is clear from the facts before the Court that Siedhoff's use of the car for personal convenience in social activities was not an emergency use authorized by either Duff or Dr. Gillespie. Thus, while we agree that as the insurance contract was consummated in Illinois and must be interpreted in the light of Illinois decisions, the "initial permission" doctrine outlined in Konrad v. Hartford Accident & Indemnity Co., 11 Ill.App.2d 503, 137 N.E.2d 855 (1956), is not applicable to the case at bar. The initial permission doctrine says that "the user need only to have received permission to take the vehicle in the first instance". In the instant case, Siedhoff did not have such initial permission, because the permission to use was limited to emergency situations, and absent an emergency, there was no permission to use. The inescapable conclusion is that

as the taking was not authorized, it is not within the coverage of the "omnibus clause" of defendant's insurance policy. Therefore, judgment will be rendered in favor of defendant and against plaintiff.